IMPORTERS AND TRADERS' NATIONAL BANK of New York, Plaintiff, *v.* WILLIAM H. PETERS, as Receiver, etc., Appellant, et al., Respondents.

When money held by a person in a fiduciary capacity has been deposited by him in his general account at a bank, the party for whom the money is held can follow it, and has a charge on the balance in the banker's hands.

If the depositor after such a deposit draws out sums by checks generally and in the ordinary manner, it must be presumed that he drew out his own in preference to the trust money.

The rule attributing the first drawings out to the first payments in, does not apply to such a case.

Certain firms deposited for collection, with the E. Bank of Norfolk, Va., their sight draft on M. & Co., of New York city, for $12,303.52, which was indorsed by the drawers in the form in which, by agreement and custom of the parties, drafts for collection only were to be indorsed, and was mailed the same day to plaintiff at New York. The draft was paid on presentment, and the amount credited to the E. Bank on plaintiff's books, together with the avails of other drafts mailed at the same time and under similar circumstances. On the next day the E. Bank suspended payment; it was insolvent at the time it received the draft, and had been for more than six months, to the knowledge of its managing officers, who had withdrawn large sums from its funds for their own purposes, which fact was not known to the drawers of the draft. The credit to the E. Bank was reduced to $5,349.45 subsequent to the collection of said draft, by payments for or on its order before plaintiff received notice of its suspension. The drawers of said drafts and the receiver of the E. Bank having commenced actions against plaintiff to recover said balance, this action, in the nature of an interpleader, was brought to determine who was entitled thereto. *Held*, that the receipt of the draft by the E. Bank was, under the circumstances, a fraud upon the drawers, and they, on discovery of the facts, had the right to reclaim it or its proceeds from anyone to whose hands it came who did not occupy the position of *bona fide* holder; that as the E. Bank acquired no right to the draft and its proceeds save as trustee, the balance in plaintiff's hands was to be deemed part of such trust fund, and so, the drawers were entitled thereto.

The drawers, before discovery of the facts constituting the fraud on the part of the E. Bank, presented and proved before its receiver a claim as creditors, which included said draft, and received a dividend thereon. After the discovery they refused to receive a second dividend so far as it included said draft, and allowed to the receiver, out of said second dividend upon their other claims, the amount they had received in the first dividend on account of said draft. *Held*, that this was a sufficient rescission of what had been done under a mistake as to the facts; that the equitable rule requiring a party rescinding to restore what he had received was satisfied by permitting the receiver to retain an equivalent sum belonging to the drawers; that they were not bound to return the identical money received.

Also *held*, the fact that the account of the E. Bank with plaintiff was credited with the proceeds of drafts received by it from other parties under the same circumstances and conditions, and so, that those parties were entitled to the same equities, was immaterial, as the owners of the other drafts had not made claim to the fund in question, but had elected to come in simply as contract creditors, confining their claim to the assets in the hands of the receiver.

(Argued June 24, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 23, 1889, which modified, and affirmed as modified, a judgment in favor of certain of the defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Wingate* for appellant. No title to out-of-town drafts vested in the Exchange Bank upon their deposit in the absence of express proof of a contract to the contrary, but they were received and held by it as agent of the depositor, and when the bank at the time was irretrievably insolvent, such depositor can reclaim such drafts or their proceeds. (*Scott* v. *O. Bank*, 23 N. Y. 289.) The courts below were in error in holding that the depositors of the other drafts were not represented by the receiver, and that they, therefore, must be considered as acquiescing in Everett's demand. (*Bockes* v. *Rathbone*, 78 N. Y. 225; *Atty.-Gen.* v. *N. A. L. Ins. Co.*, 82 id. 182; *Atty.-Gen.* v. *G. M. Ins. Co.*, 77 id. 272; *Van Dycke* v. *McQuade*, 85 id. 616; *Movins* v. *Lee*, 30 Fed. Rep. 298, 300; *Kennedy* v. *Gibson*, 8 Wall. 498, 506; *Bank* v. *Kennedy*, 17 id. 19.) The title of the Exchange Bank in the check in suit became absolute on March thirty-first, two days before the failure. (*M. Bank* v. *Lloyd*, 90 N. Y. 530.) Even if there had been actual fraud toward the depositors, they cannot follow the proceeds of this draft. (*Cragie* v. *Hadley*, 90 N. Y. 131; *I. T. & S. B. Co.* v. *Smith*, 21 Blatch. 275; *Butler* v. *Sprague*, 66 N. Y. 392.) The court erred in the exclusion of the testimony given on commission as to the entries in the books of the Exchange National Bank. (Best on Prin. of Ev. § 482; 2 Phil. on Ev. § 51; 1 Greenl. on Ev. § 561; *Tucker* v. *Woodbury*, 6 Lans. 582; *Burton* v. *Driggs*, 20 Wall. 134; *Fosdick* v. *Van Horn*, 40 Ohio, 459; *Burnham* v. *Wood*, 8 N. H. 334.)

*Joseph Larocque* for respondents. The condition of the Exchange National Bank of Norfolk, Virginia, at the time

when it received the Murchison draft from the respondents
was such, within the knowledge of the bank's managing
officers, as to make the acceptance of the deposit, under the
existing circumstances, such a fraud as entitled the respond-
ents to reclaim the draft or its proceeds and to prevent any
title passing to the bank. (*Cragie* v. *Hadley*, 99 N. Y. 131;
*Anonymous*, 67 id. 598.)    The respondents being entitled to
follow the proceeds of the Murchison draft and to recover its
proceeds as their own property, that right continued so long
as they could identify such proceeds and to the extent that
such proceeds had not gotten into the hands of a *bona fide*
dealer therewith for value and without notice; and the amount
to which the respondents' recovery was reduced, under the
decision of the General Term, consisted wholly of such pro-
ceeds clearly identified under the rules of law applicable to
that subject. (*Knatchbull* v. *Hallett*, L. R. [13 Ch. Div.]
696; *Baker* v. *N. Y. N. E. Bank*, 100 N. Y. 31; *N. Bank* v.
*Ins. Co.*, 104 U. S. 54.)    The action of the respondents in
including in their claim proved against the bank the amount
of the Murchison draft and receiving a dividend, was not,
under the circumstances, a ratification of the previous fraud-
ulent transaction under which the bank had gotten possession
of the draft or a waiver of their right to follow the proceeds
of said draft impounded in the plaintiff's hand. (*Allerton* v.
*Allerton*, 50 N. Y. 670.)

O'BRIEN, J.    On the 2d day of April, 1885, the plaintiff,
a national banking association in the city of New York, had
on deposit to the credit of the Exchange National Bank of
Norfolk, Virginia, the sum of $7,207.36, and on the same day
the latter bank, being insolvent, failed, suspended payment,
and ceased to transact business.    The defendant Peters, was
subsequently appointed receiver.    In August, 1885, when this
suit was commenced, there were two actions pending against
the plaintiff, in the Supreme Court, for the recovery of the
fund above mentioned.    One of the actions was brought by
the receiver claiming to be entitled to the money as the repre-

sentative of creditors and the other by the defendants Everett Brothers, Gibson & Co., merchants at Norfolk, and who claimed to be entitled to the fund on the ground that it represented the proceeds of paper collected by the defunct bank for them, but to which paper or the proceeds the ·bank had no title. The plaintiff then brought this action, stating in the complaint that it had the fund but was ignorant whether it belonged to the receiver or the Everett Brothers, Gibson & Co.; that it was willing and desirous to pay the same into court or to such custodian as the court might designate, and prayed that it might be permitted to do so and that then the defendants, the receiver and the Norfolk claimants, be required to interplead with each other concerning their respective rights to the same. Each of the defendants answered, setting up their respective claims to the fund as above stated and offered to allow the plaintiff to pay the fund into court. Subsequently an order, in the nature of an interlocutory judgment, was entered in the action by which it was adjudged that the complaint was properly filed; that the plaintiff pay the fund into court and be dismissed from further liability; that the defendants be restrained from further prosecuting their respective actions against the plaintiff concerning the fund; that the defendants litigate and settle the matter in controversy and their respective rights to the money so paid in, between themselves; thenceforth the litigation proceeded between the defendants, who claimed the fund, upon their respective answers, and the plaintiff as an active interested litigant, disappeared from the case. The trial court held that the defendants Everett Brothers, Gibson & Co., were entitled to the fund as against the receiver of the Exchange Bank. The General Term modified the judgment by reducing the recovery to $5,349.45, as subsequent to the collection of the draft for $12,303.52, the balance had been reduced to that amount, and from this determination the receiver appeals to this court. The answer of the Norfolk claimants states, and the trial court found certain important facts in their favor which, in the process of working out the result reached in the court below, were fundamental.

1. That on the 30th day of March, 1885, Everett Brothers, Gibson & Co., deposited with the Exchange Bank at Norfolk, for collection only, what is designated in the case as an out-of-town draft, to wit, their sight draft drawn on Murchison & Co. of New York city, and payable there for $12,303.52. That this draft was indorsed by the drawers in the form in which, by agreement and custom between the parties, drafts for collection only were to be indorsed, and then mailed by the collecting bank to the plaintiff at New York on the same day that it was deposited. On the afternoon of March thirty-first, the draft was presented by the plaintiff to the drawers who gave the plaintiff their check for the same which, on April first, was collected, through the clearing house, and the amount placed by the plaintiff on its books, to the credit of the Exchange Bank in its account.

2. That on April, 2, 1885, the Exchange Bank, to which the draft had been delivered and credited as above stated, suspended payment in the morning, notice of which was not received by the plaintiff till the afternoon, and prior to the suspension at Norfolk no notice had been received by the bank of the collection and credit of the proceeds of the draft by the plaintiff in New York. That this suspension was due to the fact that, for more than six months before, the bank was utterly and hopelessly insolvent to the knowledge of all its managing officers, and that this state of insolvency was produced by the misconduct of its managing officers in withdrawing large sums of money from the funds of the bank for their own purposes. That the condition of the Exchange Bank was not disclosed to, or within the knowledge of Everett Brothers, Gibson & Co. when the draft was deposited and credited, and that its receipt by the bank was a fraud upon the parties depositing it, which precluded the collecting bank from acquiring any title to it or its proceeds. The finding, that by agreement the draft was received for collection only, is supported by some, and that in regard to the fraud perpetrated on the drawer of the draft by abundant · evidence. Indeed the latter fact is admitted by the receiver, and assumed

by his counsel in almost every step of the discussion. That the drawer of the draft had the right, under such circumstances, to reclaim it or the proceeds, upon discovery of the facts, from anyone to whose hands it came who did not occupy the position of a *bona fide* holder, is too clear to admit of controversy. (*Cragie* v. *Hadly*, 99 N. Y. 131; *Anonymous*, 67 id. 598.)

The argument in support of this appeal, as we understand it, denies the application of this rule to the peculiar facts and circumstances of this case, but not the rule itself. The proceeds of the draft in question were intermingled with a credit on plaintiff's books, before the draft was collected and credited, of $5,142.66, and that of thirty other drafts mailed at the same time from the Norfolk bank to the plaintiff, and collected and credited at the same time substantially, and in the same way by the plaintiff, together with some smaller items received at or about the same time, but subsequently collected and credited; the whole mass, including the draft which is the subject of controversy in this suit, amounting to something over $26,000. This credit to the Norfolk bank, however, was reduced to $5,349.45, the sum awarded to the respondents, subsequent to the collection of the draft, in consequence of payments made by the plaintiff for or upon the order of the Norfolk bank, and before notice of its suspension. As the Exchange Bank did not acquire any title to the draft by reason of its fraud, it became the trustee of the drawers, as to its proceeds, and as the identical money received upon its collection could not be reached, certain equitable rules are applicable to the facts of the case. When money held by a person in a fiduciary capacity has been paid or deposited by him in his general account at a bank, the party for whom the money is held can follow it and has a charge on the balance in the banker's hands, and if a person holding money in a fiduciary capacity, pays it to his account at his bankers, and mixes it with his own money and afterwards draws out some by checks generally and in the ordinary manner, the drawer of the checks must be taken to have drawn out his own in preference to the trust money.

The rule attributing the first drawing out to the first payment in, does not apply to such a case. (*Knatchbull* v. *Hallett*, L. R. [13 Ch. Div.] 696; *Baker* v. *N. Y. N. E. Bank*, 100 N. Y. 31; *N. Bank* v. *Ins. Co.*, 104 U. S. 54.)

In the course of administration of the assets of the bank by the receiver, the respondents presented and proved a claim as creditors, which included the draft in question, and received a dividend thereon. The trial court has found that when they presented the claim and received the dividend, they were in ignorance of the facts which constituted the fraud on the part of the bank. It is also found that a second dividend was ordered upon the claim filed by the respondents, which embraced the draft as well as other claims resting wholly in contract. The respondents refused to receive this dividend, so far as it included the draft, and they allowed to the receiver out of the second dividend upon their claim, exclusive of the draft, the full amount they had received in the first dividend upon the claim involved in this action. This was a sufficient rescission of what had been done under a mistake as to the facts. They were not bound to return the identical money received. The equitable rule, requiring the party rescinding to restore what he has received, was satisfied when the receiver was permitted to retain an equivalent sum, which belonged to the respondents in any event as general creditor under another claim. (*Allerton* v. *Allerton*, 50 N. Y. 670.)

Much of the argument in support of the appeal is based upon the assumption that the sum awarded to the respondents represents in part the proceeds of drafts delivered by other parties to the Norfolk bank at the same time and under the same conditions and circumstances as the one in question. That the rights and equities of these parties to the fund are as strong as the equities of the respondents. The answer to this position is that the drawers and owners of the other drafts have not elected, as the respondents have, to pursue this peculiar form of remedy, but have elected to waive the fraud, if any was perpetrated, in receiving their drafts by the bank and to confine their claim, as simple contract creditors, to the assets

in the hands of the receiver. They are not parties to this action asserting that any fraud was committed against their rights, or that for that or any other reason their title to the drafts, or their proceeds was not affected by the transaction with the bank. The receiver takes the position that the title to all the drafts passed to the bank, and what remained of their proceeds to him, and does not claim in his answer, as the respondents do, that the bank committed any fraud upon them. Nor is there any finding or request in the record upon which this argument can be based. The counsel for the receiver claims that, in any event, an item of $417.06, the proceeds of one or more of the small drafts last mentioned, and which was allowed in the amount awarded the respondents, but which had been restored or allowed by the receiver to the owner, was erroneously included in the judgment. As to that point, it is sufficient to say that the process of tracing the proceeds of the respondents' draft and computing the amount of the balance to which they were entitled, upon the equitable rules above stated, which were adopted by the trial court, involved the determination in some sense of a question of fact, and as there is no distinct finding or request to find, as to this particular item, we cannot say that any error was committed in that regard.

On the whole, we think that the case was rightly decided below, and that the judgment should be affirmed, with costs.

All concur, except EARL, J., dissenting and ANDREWS, J., not voting.

Judgment affirmed.