JAMES MOORE, Appellant, *v.* ARTHUR D. WILLIAMS, as Receiver of the ELECTRIC SUGAR REFINING COMPANY, Respondent, Impleaded with Others, Defendants.

*Implied trusts in personalty — fiduciary obligation — following a fund — rescinding a sale — its effect.*

A company was incorporated to refine sugar under an alleged secret electric process said to have been discovered by one Friend. The president and secretary of the company induced certain persons to buy from them certain shares of its stock upon the faith of a promise to employ the moneys realized from such shares to buy such electric process from the wife of Friend, who was dead. In fact, although this was not known to any of the parties at the time, there was no such process.

The stockholders paid for their stock, and the sums paid in were deposited by the treasurer of the company in a bank. When the fraud was discovered certain of the stockholders gave notice of their intention to rescind the agreement, and a receiver was appointed, who received what remained of the fund realized from the sale of the stock to such stockholders.

In an action brought to enforce the claims of such stockholders against the fund in the hands of the receiver:

*Held*, that the representations and agreements of the president and the secretary, that the money should be used to buy the secret process, imposed upon them a fiduciary obligation so to employ it.

That this obligation was impressed upon the fund which the plaintiff had a right to follow; that there was no solid distinction, so far as the right to follow the fund was concerned, between the case of a technical trust and the existence of a fiduciary obligation.

That, although the moneys of said stockholders were deposited in bank, and were mingled with other moneys, and were, in part, checked out, yet as the evidence showed that some of the money could be identified the plaintiff could recover it in the hands of the receiver.

That although it appeared that the plaintiff represented but fifty-seven out of ninety-six shares, yet, since the holders of the other shares had not rescinded the agreement, the plaintiff might recover all the fund in the hands of the receiver, its amount not being equal to the cost of the fifty-seven shares.

APPEAL by the plaintiff James Moore from so much of a judgment, entered in the office of the clerk of the city and county of New York on the 24th day of October, 1890, as dismissed the complaint upon the merits as to the defendant Arthur D. Williams, as receiver of the Electric Sugar Refining Company, after a trial at the New York Special Term; also from so much of an order, made on the 20th day of October, 1890, as denied a motion for a reargument of that part of the decision of the trial justice which dismissed the complaint as to the receiver.

*Everett P. Wheeler*, for the appellant.

*R. Burnham Moffat*, for the respondent.

DANIELS, J.:

The defendant, in whose favor the action of the plaintiff was dismissed, is the receiver of the Electric Sugar Refining Company, a corporation formed under the laws of this State in the year 1884. And the defendants who were sued with him were the president and secretary of the corporation. The business for which the company was incorporated was the refining of sugar by a process claimed to have been invented or discovered by Henry C. Friend, and to which, upon his decease, it was claimed that his wife had succeeded. Shares of stock of the company were issued and exchanged for the process or invention represented to have been made. And 4,750 shares of such stock had become the property of the defendants, Robertson and Coterill, prior to the 1st of December, 1888. What

this process was, did not become known, either to these officers or to any of the shareholders of the stock of the corporation, until early in the year 1889, when it was discovered to be an entire imposition without any possible foundation to rest upon. The organization of the company and the issuing of the stock was what may be properly designated as a complete and unqualified fraud. But before this became known, and in December, 1888, it was proposed by the two defendants already named to make sale of 100 shares of the stock of the company to obtain money to be paid for the disclosure of the process represented to have been invented for the electrical refining of sugar. And a proposal was made by them, through an agent in Liverpool, to make the sale of such shares, in the market at that city, for the price of sixty pounds, English currency, per share. He brought this proposal to the attention of persons residing in or near Liverpool, who were stockholders in the company, and they agreed to purchase the 100 shares offered for sale, which were to be divided among these individuals in certain proportions, by which each person agreed to take a specified number of the shares. Five of these individuals agreed to take in all fifty-seven shares of the stock in this manner offered for sale, three of them each agreeing to take ten shares, one of them seven and the other twenty, and also ten additional shares, which never were paid for and need no special consideration in the examination of this case. When the fraud was discovered these persons severally elected to rescind the purchases which they had made of these shares of stock. And the two defendants from whom they were purchased were at once notified of that election, and the money which had then been paid for the shares was demanded, but its return was refused by these defendants. And after that these individuals assigned their claims and rights of action, arising out of their purchase of these shares and the existence and discovery of this fraud, to the plaintiff in this suit. And he brought it to set aside the purchases of the shares made by these individuals, and for the restoration to him as their assignee of the moneys which they had parted with in the fulfillment of their agreement to purchase the shares. Upon the trial the action was sustained against the two defendants who were the president and treasurer of the corporation,

but it was dismissed as to the receiver. And whether that dismissal of the action was justified under the circumstances is the question presented by this appeal, which has been taken upon the judgment record containing the decision and the exceptions to it, and the requests and refusals to find other matters than those contained in the decision. It appears by the findings in the decision that the object intended to be secured by the sale of the 100 shares of stock in Liverpool was to raise the money required to be supplied to obtain a knowledge or disclosure of the secret or process which it was claimed had been invented for the refining of sugar by electricity. And information of this purpose was disclosed to the persons who were applied to for the purchase of these shares. Each of the persons concerned in the offer, sale and purchase of the shares had full faith in the existence and genuineness of this alleged process. And no means had been afforded to either of them at that time for discovering that the representations concerning the process were false, and the process itself did not exist. To induce these purchasers, and others who agreed to take the residue of the 100 shares, to receive and pay for them, it was represented to them that about thirty thousand dollars were required to complete the necessary funds to obtain immediate possession of the knowledge of this secret process. It was further represented by these officers of the corporation and defendants in the action, through their agent in Liverpool, that a special arrangement was completed for insuring the speedy patenting of the process, and that the money to be raised by the sale of these shares would enable these two defendants to close the contract with Mrs. Friend, and that the money would be paid to her in exchange for the specifications of this procees. And it was agreed between them and the purchasers of the shares that the moneys to be paid by them should be handed to Mrs. Friend in exchange for the documents containing this secret process. And these two defendants also represented to the assignors of the plaintiff in this manner that the only purpose the money was required for was the payment to be made to Mrs. Friend to obtain the possession of the knowledge of this process. And the purchasers of the shares were induced to buy and pay for the stock by means of these representations, and relied upon them when they contracted to buy their shares. These facts are all distinctly found by the

court in the decision which was made after the trial, and they were sufficient to create the obligation on the part of the defendants, Robertson and Coterill, to use the money paid for the shares only in this manner. And the fact that the money was also paid as the price of the shares to these two defendants did not relieve them from the existence of that obligation and the duty to use and apply this money in that manner. · For the persons who purchased the shares under these representations and promises did so for a two-fold consideration. The one was to acquire the title to the shares themselves, and the other to obtain a knowledge of the procees alleged to have been discovered, and to secure to the corporation the exclusive right to use that process by virtue of a patent to be issued for its protection. Without the disclosure and patenting of the process the company was not in a condition profitably to carry on its business and secure its protection against the rivalry or competition of other parties in case the process really had any existence. And a controlling object of the purchasers of the shares, in taking and paying for them as they did, was to obtain the advantages expected to be derived from the disclosure and patenting of this alleged process. And when the two defendants, Robertson and Coterill, obtained the money under these representations and promises, they became obligated to use that money to secure this result. Sales under similar circumstances and upon like representations of other shares of the stock were made to other persons, by which the one hundred · shares were agreed to be disposed of, and were, in fact, disposed of, with the exception of four of these shares. There was in this manner realized from the sale of the shares the sum of £5,760. That money passed into the hands of the defendants, Robertson and Coterill, as the vendors of the shares, and also as the officers of this corporation; and on the 31st of December, 1888, they charged themselves in the books of the company with the sum of $28,108.80, which was the equivalent in American currency of the sum of £5,760 pounds English currency, and on the same day a credit was made in the loan account of the company to one of these persons, who was the treasurer, for the same sum, representing it to be the proceeds of ninety-six shares of the electric sugar stock sold by him upon the Liverpool market between the 21st and 24th of December, 1888; and in December, 1888, and before this credit had in this

manner been made, Robertson, the treasurer of the company, deposited this sum to his credit in the National City Bank, of the city of New York, where he mingled it with his own funds, but he made no payments on account of the company until after the discovery of the fraud.

In January, 1889, the sum of $10,000 was drawn against this credit in favor of the company and sent by it to the State of Michigan, where it was deposited as security for a person who had become surety on the issuing of attachments against the personal property claimed to belong to Mrs. Friend and another person, and as security for costs in suits commenced, and to be commenced, in behalf of the company, or of these two defendants, and which money was to be returned when all such liabilities should cease. The residue of the $28,108.80 was drawn from the bank for different objects, with the exception of the payment of a balance owing to the bank itself. And in that manner the entire proceeds derived from the purchase of the ninety-six shares of stock were disposed of. And that reduced necessarily the claim of the plaintiff to this sum of $10,000, so far as the identity and following of the fund has been presented by the case.

That the representations and agreement made by these two defendants with the persons who purchased these shares created a trust for the disposition of the proceeds of their sales, or, at least, imposed upon these individuals a fiduciary obligation to fulfill their representations and agreement, seems to be reasonably the result of what is shown to have taken place. For, without the assurance on their part that this money would be used and employed to obtain the process alleged to have been discovered for the refining of sugar by electricity, it is clear that these purchasers would not have parted with their money or taken the title to these shares. And under this state of the case the defendants who obtained the money in this manner became obligated so to use it. What they represented and agreed to do were sufficient to create this obligation. For, as it was said in *Day* v. *Roth* (18 N. Y., 448): "A written agreement is not necessary to create a trust in money or personal estate. Any declaration, however informal, evincing the intention with sufficient clearness will have that effect. Such declarations stand on somewhat peculiar grounds. They are not to be regarded as admissions merely of some antecedent fact in relation to the subject, but are to be looked upon

and received as constituting the very trust which they acknowledge. The doctrine of equity is, that by their own force they impress the fund with a peculiar character, and hence they are receivable on the same grounds as a precise and formal agreement. A person in the legal possession of money or property, acknowledging a trust, becomes from that time a trustee, if the acknowledgment is founded on a valuable or meritorious consideration." (Id., 453.) And the obligation which was incurred by these two defendants through their representations and agreements was founded upon a meritorious consideration. For, without that, there is not the least reason to suppose that this money would have been parted with by the persons who took these shares, and so speedily, upon the discovery of the fraud, endeavored to rescind their purchases and secure a return of their money.

It has been supposed, inasmuch as this money, the proceeds of the sales, was deposited in the bank by the treasurer of the corporation, with other moneys standing there to its credit, that the power of following it was thereby extinguished. And upon an examination of the cases *In re West of England, etc., Bank* (L. R., 11 Ch. Div., 772), that was considered to be the law, upon a review of the antecedent authorities, where no actual trust attached itself to the fund, but, at most, the obligation was one of a fiduciary character. But this decision, upon a further examination, was overruled in the case of *In re Hallett's Estate* (L. R., 13 Ch. Div., 696). And it was held, in substance, that there was no solid distinction, so far as the right to follow the fund should be in controversy, between the case of a technical trust and the existence of a fiduciary obligation. And that has been considered to be a true exposition of the law as it has been administered in this State, and also in the Supreme Court of the United States. (*Importers and Traders' National Bank, etc.* v. *Peters*, 123 N. Y., 272, 278, 279; *National Bank, etc.* v. *Insurance Co.*, 104 U. S., 54, 67–69.) And the correctness of this principle was fully held and enforced in *Newton* v. *Porter* (69 N. Y., 133, 139) and in *Ferris* v. *Van Vechten* (73 id., 113) and *Baker* v. *New York National Exchange Bank* (100 id., 31).

That the money obtained from the sale of the fifty-seven shares now in suit went into the account of Robertson and Coterill on the books of the company, and to the credit given to Robertson, as its treasurer, and into the New York City National Bank, and was then, in

part, and to the extent of $10,000, drawn out and sent to the State of Michigan, for the purposes already mentioned, where it now remains in that manner, are facts clearly found and declared by the decision of the court. And that certainly entitled the plaintiff, as the assignor of these purchasers, to follow, at least, so much of their money as went into this sum of $10,000. That it was made up to over six-tenths of the amount by their funds appears to be free from any substantial controversy. And to that extent the plaintiff is entitled to reimbursement out of this sum of $10,000. And they should, at least, have been permitted so far to maintain their action against the receiver of the company. For neither the company nor the receiver parted with any consideration whatever for the money received by it, and which has been deposited, to the extent of $10,000, in the State of Michigan. And under the case of *Bank, etc.* v. *Peters* (*supra*), it may very well be held, inasmuch as the other persons who purchased the residue of the ninety-six shares have taken no measures to rescind their purchases, that this entire sum of $10,000, subject to the obligations to which it has been subjected as security in the State of Michigan, should be recovered by the plaintiff in this action.

The facts upon which that right depends have all been found in the decision of the court, and they not only warrant, but require, a judgment to this extent to be ordered in favor of this plaintiff. It is not necessary, therefore, to consider the appeal from the order denying the plaintiff's motion for a reargument, for, upon the case as it is presented, the plaintiff is entitled to maintain this action for the recovery of this money. As to its identity there is no possible ground of doubt, and the judgment should, therefore, be reversed and judgment ordered for the plaintiff, with costs of the action and costs of this appeal, to be settled as to its terms upon notice to the counsel for the receiver, and the appeal from the order should be dismissed.

VAN BRUNT, P. J., and LAMBERT, J., concurred.

Judgment reversed and judgment ordered for the plaintiff, with costs of the action and costs of this appeal to be settled as to its terms upon notice to the counsel for the receiver, and the appeal from the order dismissed.