(1 App. Div. 391.)

### HARDING v. FIELD.

(Supreme Court, Appellate Division, First Department. February 7, 1896.)

1. PRINCIPAL AND AGENT — PROPERTY IN HANDS OF AGENT — FOLLOWING PROCEEDS.
   A principal who furnishes his agent money for investment is entitled to follow, not only the property bought, but its proceeds, if sold, so long as they can be traced and identified.

2. SAME—PROPERTY IN KIND.
   Where one buys stocks for another, and sells and reinvests the proceeds in other stocks at his own discretion, retaining the purchases in his possession, and simply reporting to the owner, he is not required to retain the identical certificates bought with the principal's money, but it is sufficient if he keeps an equal number of the same kind, and on his death the principal may claim any remaining among the agent's effects.

3. SAME—WHERE MIXED WITH AGENT'S PROPERTY.
   An agent who buys stocks for his principal and also on his own account, and afterwards sells a part and uses the proceeds, will be presumed to have sold from his own portion, and the principal may claim that remaining.

Appeal from judgment on report of referee.

Action by William A. Harding, as administrator of Medad W. Stone, deceased, against Walter H. Field. Judgment was entered in favor of defendant, and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

T. D. Kenneson, for appellant.
H. R. Bayne, for respondent.

RUMSEY, J. This action was originally brought by the administrator of Stone against the firm of Goodhart & Co., who were Stone's brokers, to recover the sum of $8,629.43, which sum was the proceeds of certain stocks and bonds held by Goodhart & Co. as brokers for Stone. A claim was made to the money by Field, the present defendant, and upon paying the money into court Goodhart procured an order substituting Field as the defendant, in the place of the firm of Goodhart & Co. After the substitution, the case was referred, and the referee reported in favor of the defendant, that he was entitled to the money paid into court. From the judgment entered upon this report, the plaintiff appeals. It appeared upon the trial that for many years Stone had been an intimate friend of the defendant Field, and they had close personal

and some business relations. In the year 1887 the defendant delivered to Stone certain securities which he then owned, requesting him to sell them at the best price he could, and to invest the proceeds in other stocks at his discretion. Stone made the sale of the securities, and bought stocks with the money received. These stocks were sold, by direction of Field, from time to time, and other stocks and securities were bought with the proceeds, and this process was continued until the death of Stone, in the month of March, 1891. Stone, as he bought the securities for Field, reported his purchases, and also reported the sales that he had made from time to time. As the result of his reports, it appears that, shortly before his death, there remained unsold of the securities bought for Field 600 shares of stock of the National Lead Trust, 200 shares of the stock of the Oregon Improvement Company, and a $1,000 bond of that company. Two hundred shares of the National Lead Trust were sold shortly before Stone's death, and the remainder of the stock was in the possession of Goodhart & Co. at the time he died. The stock was sold shortly after his death, and after crediting the proceeds to Stone, and charging against the proceeds the balance due from him, there remained in the hands of Goodhart & Co. this sum of $8,629.43. The referee held that the securities in the hands of Goodhart & Co. were the property of Field, and he was entitled to follow the proceeds of their sale, and therefore was entitled to the money in the hands of the brokers, in preference to the administrator of Stone. There is practically no dispute upon the facts in the case, and the only question is whether or not the inferences drawn by the referee from those facts were warranted.

It is well settled that where one occupies the relation of agent to another, and in that relation makes an investment for such other, with the money of his principal, the principal is entitled, not only to the property bought, but to the proceeds of that property, so long as it can be traced and identified. It is also settled that where a broker has bought stocks or securities for his principal upon a margin, or upon any other contract, by virtue of which he is entitled to hold the property so bought as security for advances or loans made to his principal, he is not required to take the certificates or the bonds in the name of his principal, or to keep the securities which he originally purchased separate from the other stock of the same kind belonging to himself, but he sufficiently fulfills his obligation if he keeps on hand stock and securities of the same kind as those which he has purchased for his principal, ready to be delivered when it is his duty to do so. Horton v. Morgan, 19 N. Y. 170; Caswell v. Putnam, 120 N. Y. 153, 24 N. E. 287. The reason of this rule is that the broker has the right to the possession of the stock, and the transaction of business is made more convenient by permitting him to carry it in his own name, so long as he is entitled to the possession of it. In this case, by the terms of the understanding between Stone and Field, Stone was to sell the stocks which he bought for Field whenever it was in his judgment profitable to do so, and to buy new stocks at his discretion, and to continue that mode of dealing. Under such a state of facts,

we think the rule laid down in Caswell v. Putnam, supra, should apply, and that we should hold that Stone was not called upon to retain the identical certificates which he had bought for Field, but that he should be required only to keep on hand a sufficient quantity of stock of a like kind, so that, if at any time he was called upon to transmit it to his principal, he should be prepared to do so. This being the extent of the obligation of the agent, it necessarily follows, we think, that the principal, when he seeks to recover his securities bought for him by the agent, is not called upon to put his finger upon the identical certificates, and be able to say that those were the ones purchased for him, but he sufficiently identifies them if he shows that the agent purchased that particular kind of securities, and has the necessary amount in his hands, which he can deliver upon demand.

In this case it appeared, from the reports of Stone made to Field, that he had bought securities of the particular kind which are claimed to belong to the defendant, and that at the time of his death there was held for him by his brokers the precise amount which he was required to have on hand to enable him to deliver to Field just the number of shares and bonds that he was entitled to. It appeared also that Stone had no other stocks or bonds anywhere, except those in the hands of Goodhart & Co. This, we think, was a sufficient indentification of the securities as the property of Field. It is quite true that he represented to Field that he paid in full for the stock which was bought for his account, and it is also true that he had in his hands sufficient money of Field to enable him to do so. It is claimed by the appellant that, because this stock was not paid for, but had been bought by Goodhart & Co. upon margins furnished by Stone, and had not been paid for in full, it cannot be the stock represented by Stone to Field to have been purchased for him,—that the identification fails. If it had been made to appear that Stone had in his possession other securities of the same kind which he had bought and paid for, there might be some force in the contention of the plaintiff; but as it does appear that Stone made no purchase of this sort of securities through anybody but Goodhart & Co., and he had no other securities of this kind except what he bought in the same way, and that this was the purchase that he reported to Field as bought upon his account, it must be deemed that these were the securities which he had bought for Field, and that his representation that they were paid for was not true. The referee was not obliged to attach equal credit to the representation of Stone that he had paid for the stock as to that portion of it which represented that he had bought it. He might accept the one portion of the representation and discard the other,—which he evidently did.

It is fair to infer, from the testimony in the case, that Stone had purchased through Goodhart, not only securities for Field, but also a considerable amount of the same kind of securities upon his own account. It appears that a good many of these were sold from time to time, and the proceeds placed to Stone's credit. Upon such a state of facts, the presumption is that the securities sold by Stone

for his own account were his own property, and that he retained in his possession or under his control those which he ought to have retained to enable him to deliver them to his principal when called upon. In all cases, the presumption is that every man intends to do right rather than wrong, and to perform his duty rather than to violate it. Pom. Eq. Jur. § 420; Pennell v. Deffell, 4 De Gex, M. & G. 372, 382. In the case last cited, the rule is laid down that, when one occupying a fiduciary relation to another has mingled the trust funds with his own funds, the drafts which he makes for his own purposes upon the common fund will be deemed to be drawn from his own share, and the presumption will be that he intended to keep the trust fund intact to answer the legitimate claims upon it. The same rule is laid down in Knatchbull v. Hallett, 13 Ch. Div. 696. In that case Hallett was the agent of Mrs. Cottrill, and had in his possession a quantity of bonds of a particular kind belonging to his principal, which, without right, he sold. The proceeds of these bonds were traced, and Mrs. Cottrill claimed against his estate that these proceeds should be paid over to her, rather than to the general creditors of the estate. The court held that her claim was well founded. It was said that, if a man mixed trust funds with his own, the whole would be treated as trust property, except so far as he might be able to distinguish what was his own; that is to say, that where it appeared that the fund was the proceeds of trust property, it would be presumed that the cestui que trust was entitled to it, rather than the estate of the trustee. The broad principle was laid down in that case, as stated above, that, where the trustee had mingled trust moneys with his own, he could not be heard to say that he used the trust money instead of his own money, so long as he had the right to use his own money, or so long as there remained in his possession any money which could be traced to the trust fund. The principle laid down in that case, which is well established in equity, has been approved and adopted by the courts of this state (Heidelbach v. Bank, 87 Hun, 117, 33 N. Y. Supp. 794; Bank v. Peters, 123 N. Y. 272, 25 N. E. 319), and is quite sufficient to support the judgment here. When it had been made to appear (as it was, beyond any question) that the money now in court was the proceeds of the securities which Stone had represented that he held for Field, the defendant's case was made out, and the referee could do nothing else than he did do,—which was to apply the legal presumption that the fund in court was the proceeds of the securities of the defendant, and require the money to be paid over to him. The judgment must be affirmed, with costs. All concur.