(96 App. Div. 75.)

## TOWN OF WALTON v. ADAIR.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. TAXATION—RAILROAD TAXES—DISPOSITION—LIABILITY OF TREASURER.

Municipal Law, § 12 (Laws 1892, p. 1736, c. 685), makes it the duty of the treasurer, on receiving the town taxes imposed on a railroad, to purchase the bonds of the railroad, issued by the town in aid of such road, or to purchase other designated bonds as a sinking fund for the railroad bonds with the sum remaining after deducting the school and highway taxes imposed on the railroad. A county treasurer paid over to a town supervisor the amount of the railroad taxes assessed as for town purposes, instead of investing same as directed by the statute. *Held*, that the town was entitled to recover from the treasurer the money so paid unless it had had the benefit thereof.

2. SAME.

A county treasurer wrongfully turned over to a town supervisor the money collected from a railroad as taxes for state purposes. The state tax levied against the county had been paid in full. *Held* not to show that the county had had the benefit of the fund so paid to the supervisor, so as to relieve the treasurer from liability.

3. SAME—STATUTES—CONSTRUCTION.

Laws 1874, p. 353, c. 296, provides that all the moneys collected from a railroad for county taxes shall be paid to the railroad commissioner of the town, who shall apply the same to the payment of the interest and principal of the bonds issued in behalf of the railroad. Laws 1879, p. 315, c. 234, declares that the duties of the railroad commissioner shall devolve on the supervisor of the town. *Held*, that the collector of taxes is required to pay the taxes assessed for county taxes against the railroad to the supervisor of the town, and a payment to the supervisor by the county treasurer, who had received the same without warrant of law, must be deemed a compliance with the statute relieving the treasurer from any liability on account of such payment.

4. SAME—EVIDENCE—SUFFICIENCY.

A treasurer wrongfully paid to a town supervisor taxes assessed for town purposes against a railroad, instead of investing the same as required by Municipal Law, § 12 (Laws 1892, p. 1736, c. 685). The town supervisor mingled such money with funds rightfully in his hands as supervisor. He absconded, being in default. On the issue whether the town

had had the benefit of the money wrongfully paid to the supervisor, evidence *held* not to show that it had had the benefit of the money, and the treasurer was liable to the town for the amount so paid.

5. SAME—WRONGFUL PAYMENT OF TAXES—STATUTES VALIDATING—EFFECT.

Laws 1903, p. 1182, c. 515, validating any payment made in good faith by the treasurer of any county to any town supervisor of the taxes from railroad corporations in the town, cannot destroy the right of a town to sue a county treasurer for such taxes wrongfully paid to a supervisor who absconded.

Appeal from Special Term, Delaware County.

Action by the town of Walton against Hugh Adair. From a judgment dismissing the complaint, and from an order directing the judgment, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Marvin & Hanford (E. H. Hanford, of counsel), for appellant.

C. L. Andrus, for respondent.

SMITH, J. In 1899 and in 1900 this defendant was treasurer of Delaware county. As such treasurer, upon the 9th day of January, 1900, he received from the New York, Ontario & Western Railroad Company the sum of $2,640.66, its taxes for all purposes in the town of Walton. By section 12 of the municipal law (Laws 1892, p. 1736, c. 685) it was his duty, with the part of such taxes not assessed for school district and highway purposes, to purchase the bonds of said railroad, where they could be purchased below par, and to cancel them, and, if such bonds could not be purchased below par, it was the duty of the treasurer to invest such moneys in bonds of the United States, or of the state of New York, or of any town or village or city of such state, and hold such bonds as a sinking fund for the redemption of the outstanding railroad bonds. This statute was a general statute, providing for all towns which had issued bonds in aid of the construction of a railroad where bonds had not been paid. Of such $2,640.66 so received by the defendant, after having deducted the highway taxes and the school district taxes, the sum of $2,062.14 remained for investment. Of this amount the sum of $1,403.68 was the amount assessed as for town purposes, the sum of $415.26 the amount assessed as for county purposes, and the sum of $243.20 the amount assessed as for state purposes. These moneys were all turned over to the supervisor of the town of Walton. Of these taxes, which, under the statute should have been invested, no question is made that that part of it raised for town purposes was wrongfully paid to the supervisor, and the town clearly has the right to recover the same, unless it be shown that the town has already had the benefit of these moneys. The respondent insists that the part of these moneys raised for county purposes was properly paid to the supervisor under another statute, which will be considered hereafter, and that, inasmuch as the county has paid in full its state tax, the county will be deemed to have received the benefit of that part of this fund which was collected for state taxes.

As to the last proposition the argument of the defendant is not convincing. The county treasurer pays from the moneys first received the

amount which the state demands of the county as its proportion of tax. These moneys, although assessed as for state taxes, he would be required to hold for investment, and he did hold them until he paid them over to the supervisor of the town. It cannot be held, therefore, that the county has had the benefit of this payment unless it be shown that these moneys have been applied to some other indebtedness of the county.

The statute requiring these moneys to be held as a sinking fund for the bonds issued in behalf of the railroad was chapter 907, p. 2303, of the Laws of 1869. Section 12 of the municipal law (Laws 1892, p. 1736, c. 685) is a re-enactment, in substance, of this act. At the time of the passage of the act of 1869, the New York, Oswego & Midland Railroad Company, the predecessor of the New York, Ontario & Western Railroad Company, from the assessment of which these taxes were collected, was exempt from taxation. By chapter 296, p. 353, of the Laws of 1874, it was provided that all the moneys collected from the said railroad for county taxes should be paid to the railroad commissioner of the town, and it was made the duty of the railroad commissioner of the town to apply said moneys to the payment of the interest on the bonds issued in behalf of said railroad company, or of the principal thereof. By chapter 234, p. 315, of the Laws of 1879, it was provided that the duties of railroad commissioners in the towns of Delaware county should devolve upon the supervisor of the towns, respectively, who should act as railroad commissioners. Under this act, which remains unrepealed, as far as I have been able to discover, it was the duty of the collector of taxes to pay the amount assessed for county taxes against said railroad to the supervisor of the town, rather than to the treasurer, and the payment by the treasurer who had received them, without warrant of law, to the supervisor, will therefore be deemed to be in execution of the statute, and not a violation of his duty. Of the $2,062.14, therefore, which were properly for the payment of the bonds, or for investment either by the county treasurer and by the railroad commissioner, the sum of $415.26 was properly paid to the supervisor, leaving $1,647.88 as the amount of moneys wrongfully transferred by the treasurer of the county to the supervisor of the town of Walton.

The learned trial judge has found that these moneys all went to the benefit of the town, and upon this ground has dismissed this complaint. I am unable to find any sufficient evidence upon which this conclusion can rest. It must be based, if at all, upon the evidence, first, that in the making up of the tax levy no provision was made for the setting aside of this fund which has been called the "railroad tax rebate"; that the full amount was necessary for the payment of the audits against the said town; and the further evidence of one Patterson that all those audits had been paid. If all these moneys were needed for the payment of the debts of the town, and those debts were paid from these moneys, the conclusion, of course, would follow that the town had had the benefit of these moneys, although wrongfully paid by the county treasurer to the supervisor. While there is evidence, however, that they were all needed for the debts of

the town, and that all the debts of the town had been paid, the evidence that those debts had been paid is not satisfactory. It is given by an attorney, who has examined the records simply, who cannot in any way be presumed to have personal knowledge of the matters of which he swears; and, moreover, there is no evidence that those debts were paid from these moneys. For aught that appears in this record, those debts may have been paid from moneys subsequently collected, or from other funds belonging to the town. On the contrary, the bank account of the supervisor is presented. These funds were given to the supervisor in two checks, one of $1,800 and another of $262.14. The check for the $262.14 was never deposited in the supervisor's bank account as far as can be ascertained. The check of $1,800 was deposited in that account upon February 5, 1900. Upon January 30, 1900, the supervisor had on hand in his account $19.82. Aside from those moneys received from this county treasurer, the next moneys received by the supervisor were upon March 24th, when he received the collector's check for $3,867.36. Meantime the bank had paid out for town accounts the sum of $285.55, so that at least $265.73 of this $1,800 was applied in payment of town accounts. From the 24th of March the moneys received by the supervisor applicable to the payment of the debts of the town were more than sufficient to pay the checks drawn upon that account for town indebtedness. It was a full year from the time this $1,800 was deposited in the account of the supervisor before he absconded, and meanwhile he paid out from eight to nine thousand dollars by check from his account as supervisor. The plaintiff contends that, inasmuch as after March 24th he had in that account moneys properly applicable to the payment of town indebtedness, in addition to this $1,800, the payments for town indebtedness must be presumed to have been made from those moneys deposited properly applicable thereto, and that the $1,800 deposited, or such part thereof as was left upon March 24th, not being properly in his hand as town moneys, should be deemed to be a personal deposit, against which his checks for private indebtedness, which he drew, should be charged. This principle is claimed to be warranted by the decision in the case of the I. & T. Bank v. Peters, 123 N. Y. 272, 25 N. E. 319. For the moneys which were rightfully received by the supervisor his bondsmen are liable for their proper application. For this $1,800, or so much thereof as was wrongfully received by the supervisor, his bondsmen are not responsible for its proper application. The funds paid the supervisor by the county treasurer having been mixed with other funds which were rightfully in the hands of the supervisor, he having absconded and being in default, it does not lie with the county treasurer to say that the moneys which he wrongfully paid to the supervisor have been applied upon the town indebtedness while the supervisor had in his hands moneys properly applicable thereto. The bondsmen of the supervisor would seem to have the clear right to insist that the payments for town indebtedness should be charged against the funds properly in the hands of the supervisor and for individual indebtedness against the funds which he held as without

right. If the contention of the defendant be true ·that this $1,800 is deemed to have been paid out upon the checks for town indebtedness, while there were other funds in the account applicable to the payment of those debts, then the town is without remedy against the county treasurer or his bondsmen, or against the bondsmen of the supervisor. If these moneys be all traced to the payment of the· indebtedness of the town, this defendant would not be held liable therefor. Having diverted the fund, however, from the channel in which he was, by law, commanded to place it, before he can be relieved from responsibility for his wrongful act he must show clearly that the town has not lost thereby. This, we think, he has failed to do.

Finally, the respondent insists that by chapter 515, p. 1182, of the Laws of 1903, this payment by the county treasurer to the supervisor was legalized. That act constituted an amendment to section 12 of the general municipal law (Laws 1892, p. 1736, c. 685), and the act recites that "any payment heretofore made in good faith by the treasurer of any county to any town, or to the supervisor thereof, of the taxes received in any year by such treasurer from railroad corporations in that town is hereby validated." This would be an answer to this action if the Legislature has power to take from the town a cause of action existing. A cause of action is property which can only be taken from an individual or a town by due process of law, and as far as this act assumes to validate this proceeding and destroy the right of action which the town had against the county treasurer for the· moneys so wrongfully appropriated, the act must be deemed inoperative. The judgment must be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.