## WILLIAMS v. VAN NORDEN TRUST CO.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. BANKS—INSOLVENCY—FRAUDULENT DEPOSITS—FINDINGS—EVIDENCE.

In an action by a bank depositor to recover a deposit alleged to have been received by the bankers through fraud and with knowledge of the insolvency of the bank, evidence *held* insufficient to sustain a finding that the bankers' insolvency at the time the deposit was received was of such a character that it was manifestly impossible for them to continue business and meet their obligations, and that they accepted the deposit with knowledge of such fact.

2. SAME—WITNESSES—INTEREST.

While the court is not bound by the testimony of a witness called by the plaintiff, it is not justified in refusing to believe the witness, and, without further evidence, finding contrary to his testimony, because the witness was a party to the action, and therefore interested.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 2438, 2439.]

3. SAME—TRUST FUNDS.

In an action by a depositor to recover from the assignee for the benefit of creditors of bankers a deposit alleged to have been received by the bankers on the eve of their insolvency, plaintiff cannot recover without proof that the proceeds of the deposit actually came into the hands of the assignee.

4. SAME—EVIDENCE—SUFFICIENCY.

In an action by a depositor to recover from the assignee for the benefit of creditors of bankers a deposit alleged to have been received by the bankers with knowledge of their insolvency, evidence examined, and *held* insufficient to establish that any part of plaintiff's money ever came into the hands of the assignee.

Appeal from Special Term, New York County.

Action by Oliver Williams against the Van Norden Trust Company, as assignee for the benefit of creditors of James Clarke and Hudson Clarke, impleaded. From a judgment on a decision of the court in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Edward W. S. Johnston, for appellant.

Robert L. Luce, for respondent.

INGRAHAM, J. The action was brought to recover from the assignee for the benefit of creditors of the defendants Clarke the proceeds of a check deposited by the plaintiff's assignor with the defendants Clarke, who were private bankers, on the 3d of December, 1903, upon the ground that the defendants Clarke were at the time of the deposit insolvent, and guilty of a fraud in receiving the check on deposit; the plaintiff claiming to follow the proceeds of the check into the hands of the Clarkes' assignee for the benefit of creditors. The case was tried at Special Term, and the learned trial judge filed his decision, in which he found that on December 3, 1903, at about 2 o'clock in the afternoon, the said Edmund T. Davis deposited with the said Clarkes in their private bank a check for $166.66, which said check, before being de-

posited, was duly indorsed by Davis, and that it was received for deposit by the defendants Clarke, and credited to Davis' account; that the check was thereupon and on the same day deposited by the defendants Clarke in the Chatham National Bank, which bank proceeded to collect it, and place the proceeds thereof to the credit of the defendants Clarke; that at the time the defendants Clarke received the said deposit they were insolvent, and knew that they were insolvent, but that such insolvency was unknown at the time of the said deposit to the said Davis, and that the acceptance of the check by the defendants Clarke was a fraud upon him; that on December 4, 1903, the defendants Clarke made and executed a general assignment for the benefit of creditors to the defendant Van Norden Trust Company; that among the assets which came into the hands of the Van Norden Trust Company were the proceeds of the said check for $166.66, which came into its hands as assignee on or about January 11, 1904.

If these findings of fact are sustained by the evidence, the legal conclusion follows, and consequently the question is whether there is evidence to sustain these findings of fact. The evidence is undisputed that upon the deposit of this check with the defendants Clarke the Clarkes gave the plaintiff's assignor credit for the amount of the check, the amount being entered in the passbook of the plaintiff's assignor, and that thereupon the defendants Clarke on the same day deposited the check with the Chatham National Bank, with which the Clarkes had an account; and it was admitted that on the same day—December 3d—the check was collected from the bank upon which it was drawn. There was thus received by the Clarkes on the 3d day of December the proceeds of the check, and on that day the Clarkes became the debtor of the plaintiff's assignor for the amount represented by the check. The money or the proceeds of the check became the property of the Clarkes. The right of the plaintiff's assignor to rescind this contract, which had resulted in vesting the Clarkes with the title to the check or its proceeds, is based upon fraud. The fraud relied upon is based upon the receipt by the Clarkes of this deposit from the plaintiff's assignor when they were insolvent, such insolvency being known to the Clarkes at the time they received the deposit. In Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9, in discussing the principles upon which such a cause of action rests, it is said, upon a deposit being made by a customer in a bank in the ordinary course of business, of money, or of drafts or checks received and credited as money, the title to the money or to the drafts or checks is immediately vested in and becomes the property of the bank; that the transaction, in legal effect, is a transfer of the money, or drafts, or checks, as the case may be, by the customer to the bank, upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor; that the bank acquires title to the money, drafts, or checks on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business; and that one who has been induced to part with his property

by the fraud of another, under guise of a contract, may, upon discovery of the fraud, rescind the contract and reclaim the property, unless it has come to the possession of a bona fide holder. In that case the bank was insolvent, owing debts to the amount of $1,300,000, with assets not exceeding in value 40 per cent. of its debts, and had been so insolvent for months before its failure. The condition of the bank was known to the officers or directors charged with the management of its affairs; and it was held that a gross fraud was perpetrated on the plaintiffs in permitting them to make the deposits in question; that the bank was not only irretrievably insolvent, but it had apparently given up the struggle to maintain its credit before the deposit was made. Its drafts had gone to protest, and it was manifest that a condition of open insolvency must immediately ensue. The deposits were made between 2 and 3 o'clock in the afternoon, and the bank closed its doors at the usual hour on that day, and never opened them afterward; and it was held that the acceptance of the deposit under those circumstances constituted such a fraud as entitled the plaintiffs to reclaim the drafts or their proceeds.

The mere fact of insolvency at the time the deposit was received is not sufficient to justify a finding of fraud, but the insolvency must be of such a character that it was manifestly impossible for the bankers to continue in business and meet their obligations; and that fact must have been known to the bankers, so as to justify the conclusion that the bankers accepted the depositor's money knowing that they would not and could not respond when the depositor demanded it. It is fraud that must be proved. An honest mistake as to the condition of the bank and an honest belief in the solvency of the institution, if it exists, negative the conclusion of the fraud upon which the plaintiff's cause of action must depend. Now, on the afternoon of December the 3d, at 2 o'clock, the plaintiff's assignor deposited this check with the Clarke bank, and received at that time a credit for the amount, and the Clarke bank proceeded to collect the check, and it is conceded that it was collected on the same day. It then appeared that on December 4th the defendants Clarke made a general assignment for the benefit of creditors to the defendant the Van Norden Trust Company, and that such assignment was filed in the office of the clerk of the county of New York on the 5th day of December, 1903, this assignment being admitted by the answer. There was then introduced in evidence by the plaintiff the inventory and schedules of the firm of James Clarke and Hudson Clarke, which contained a summary of the assets, as follows: "Debts and liabilities amount to $54,497.81; assets nominally worth $55,850.77; assets actually worth $51,500.43." This left the firm with a deficiency of assets of a little over $4,000. The inventory and schedules were not signed by the Clarkes, but were signed by an officer of the Van Norden Trust Company, the assignee. The defendant Hudson Clarke was then called as a witness by the plaintiff, and testified that he was a member of the firm of William Clarke & Sons; that he was engaged in a banking business, and was at the place

of business every day, and was familiar with the conditions of the business. When asked whether there was any difference in the financial standing of the house on December 4th, the day on which they made the assignment, from what it was on the 1st, 2d and 3d, the witness said: "On the 4th of December we were called upon very heavily, and my brother, who had more of the supervision of the business than I had, became a little alarmed, and our bank account was slightly reduced, you know, by drafts we had there, and he came to me hurriedly, and said, 'Our account in the bank is rather low, and I don't know what in the devil we have to do.' So he thought we had better to protect our people; but we had plenty of funds on hand, and he wouldn't take the trouble to go in the safe to look at them." The question then was, "Was there any difference?" To which the witness answered, "No, sir; not a bit; only there may have been three or four thousand dollars;" and in explaining the witness said: "As I say, our bank account had been reduced by our drafts that had been presented on that day. About the 1st of the month we had heavy drafts made upon us. This time it was extraordinary. By drafts I mean checks. Deposited by depositors with us." He further testified that his firm was all right; that there was nothing the matter with it; that there was nothing to be alarmed at, at all; "there wasn't at the time we made the assignment, so far as that goes;" that at the time they made the assignment they were not insolvent; that they did not refuse to pay any checks or to meet any other demand that was made on them; "that the liabilities would have exceeded the assets if they had been properly handled;" that the firm owed $10,000 of borrowed money, which was represented by two notes secured by mortgages upon some real property, but there was no evidence that these notes, or either of them, were then due; and this was the only evidence of the insolvency of the bankers on the 3d of December, when this deposit was made, or from which the court could find that they knew or believed at the time that they were insolvent.

Thus the only evidence of knowledge of insolvency by the bankers was the sworn statement of one of the firm of bankers called by the plaintiff that they were not insolvent; that he believed that they were perfectly able to go on in business, and pay all their debts, and that the assignment was made because of a fear of trouble by reason of heavy drafts that had been drawn upon them. The conditions that existed in every case in which it has been held that it was a fraud to continue business and to continue to receive deposits are certainly very different from the conditions disclosed in this case. While it is quite true that the court was not bound by the testimony of a witness called by the plaintiff as to the knowledge of the firm as to its condition, the court was certainly not justified in refusing to believe the witness, and, without further evidence, finding the exact contrary from his testimony, because of the fact that he was a party to the action, and therefore an interested witness. As I read this testimony, there is no evidence to justify a finding that either of the Clarkes had

any reason to believe on the 3d day of December that they were insolvent, or that they could not continue in business. To prove fraud, something more is necessary than proof that the firm was insolvent, and subsequently made an assignment. The fraud here is based upon bankers continuing in business and receiving a deposit from their customer with knowledge of the fact that they were insolvent, and unable to pay the indebtedness resulting from the deposits. I do not think the evidence is sufficient to show that the defendants Clarke were guilty of fraud, and thus the foundation of the plaintiff's right to rescind the transaction by which the title to this check vested in the bankers falls.

I am also of the opinion that the evidence fails to establish that the proceeds of this check actually came into the hands of the assignee. Assuming that there had been fraud, and that the plaintiff was entitled to rescind the transfer of the check to the bank, as against the assignee, the plaintiff cannot recover unless he can prove that the identical money realized from this check came into the possession of the assignee. Immediately after the check was deposited in the Clarke bank they deposited the check in the Chatham National Bank. At the close of business on the 2d of December, 1903—the day before the deposit—the Clarkes had on deposit with the Chatham National Bank a balance of $4,678.34. On the 3d of December there were two deposits made—one of $4,432, and one of $1,793—one of which deposits probably included the check deposited by the plaintiff. During the 3d of December there were 16 checks presented, leaving a balance on the night of the 3d of $5,286, and that was the amount to the credit of the Clarkes on the morning of the 4th of December. It does not appear that there were any deposits on the 4th of December, but on the 4th checks on the bank were paid, leaving at the close of business a credit balance of $1,864.20. On the 5th of December checks to the amount of $396.65 were paid. The assignment was executed on the 4th and filed on the 5th. We have, therefore, the fact that at the beginning of business on the 3d of December there was on deposit $4,678; that deposits were made of $6,225 on the 3d. Just how much of this represented checks that were deposited on the 3d with the Clarkes under the same circumstances that the plaintiff's assignor's check was deposited does not appear, but there is nothing to show that these deposits were not money received by the Clarkes under exactly the same conditions as was the plaintiff's money, and for which the Clarkes' fraud in continuing the business would justify these other bankers in disaffirming the deposit and recovering back the proceeds. Yet, before the close of business on the 4th, when the Clarkes made their assignment, all of the money that was deposited on the 3d and more than one-half the money that was deposited on the 4th had been withdrawn; so that on the morning of the 5th there was but $1,864.20 left, and this was subsequently reduced by drafts paid on the 5th; and, so far as appears, all that was turned over to the assignee was about $1,000. How can it be said, therefore, that this $166.66, the amount of the check deposited by the plaintiff, remained

on deposit in the Chatham bank to the credit of the Clarkes, and was received by the assignee from the Chatham bank as a part of this $1,000? It is true that it appeared that there was always $166.66 to the credit of the Clarkes in the Chatham bank until the account was finally closed by the assignee, but it does not appear but that this $1,000 that was finally obtained by the assignee was the property of the other customers doing business with the Clarke bank, and who made deposits on the 3d or 4th of December, and who, if the plaintiff is entitled to disaffirm the contract, are also entitled to disaffirm it. I think that, to entitle a plaintiff to trace money that has come into the hands of one who has received it in fraud into the hands of a third party, to whom the fraudulent receiver has transferred it, the identical money must be traced.

In Matter of North River Bank, 60 Hun, 91, 14 N. Y. Supp. 261, the presiding justice states the rule which would preclude a recovery in this case. There, as here, a depositor made a deposit in a bank, which shortly after suspended. When it was ascertained that the bank was insolvent, a receiver of the bank was appointed, and the amount of that deposit was ordered to be repaid to the depositor by the receiver. In reversing that order the presiding justice said:

"We think that upon an examination of that case [Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9] it will be seen that, even if for no other reason, the motion should have been denied because one of the elements stated to be essential by that case was absent in the case at bar. The amount deposited by the petitioners had gone into the general funds of the bank. There is no proof that it ever reached the hands of the receiver, and there is no proof but that it has not lost its identity. There is no pretense that any particular $533.42 which came into the hands of the receiver was the $533.42 deposited by the plaintiff; non constat, but that it may have been paid out during the one to two hours that the bank was doing its business. Unless the money can be traced, the petitioner could claim no preference."

Here, upon the deposit of this check with the Clarke bank, the bank became the owner of the check. By its deposit of the check with the Chatham bank, the Chatham bank became the owner of the check, and the Chatham bank became indebted to the Clarkes in the sum of money represented by the balance of its account. For two days after that sum was deposited it continued to receive deposits from the Clarkes and to pay checks of the Clarkes. All and more of the money that was deposited with the Chatham bank to the credit of the Clarkes on the day that the plaintiff's assignor made the deposit was paid out, and the balance that resulted, and which was received by the assignee, was the balance of the total amount to the credit of the Clarkes on the morning of December 3d, with the deposits on that day, less the amount of the checks subsequently paid out by the bank up to and including the 5th of December, when the assignment was made. There is nothing here that enables the court to say that this particular $166.66, the proceeds of this check, remained in the Chatham bank, and were paid over by that bank to the assignee.

I think the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.