Larkin, J.
(concurring). The limitation on the power of this court to review this determination is made clear by a long line of decisions, of which three are recent ones — Matter of Weber v. Town of Cheektowaga (284 N. Y. 377), Matter of Miller v. Kling (291 N. Y. 65) and Matter of Cole v. Lybolt (296 N. Y. 659). Still a civil service employee, who is a veteran, has the statutory right to have reviewed, in the courts, a hearing, on charges, resulting in an adverse determination. Unless, then, the construction placed upon the power of review authorizing, only, an examination of the record to see if the determination made was supported by “ substantial evidence,” is a hollow thing, a mere lip service to the veteran’s right of review, then “ substantial evidence ” means not “ any evidence,” but rather that quantum of proof which would satisfy any fair minded person of the employee’s guilt.
It is patent that there was no direct evidence that petitioner ever personally received the reward. If, however, there was enough to establish that he solicited the sending of a check made to his order, to his home address, with the intention that his wife, the paid financial secretary of the State Police Benevolent Association, of which he was president, should receive it, indorse his name thereon, and deposit it to the credit of the association, then, even though petitioner did not personally profit by the reward, such conduct would be a violation of the spirit of the regulation.
The record discloses that the. foregoing essential finding could only have been made by the trier of the facts drawing from other facts which were established and uncontradicted, two inferences: (1) That when petitioner placed his name and home address on the package enclosing the cap to the owner, he did so for the express purpose of having a check for $5 payable to his order sent to him at his home address in Niagara Falls; and (2) That he knew that his wife had received the check and had deposited it to the credit of the association.
Concededly there are admitted facts warranting the first inference. Petitioner frankly admitted knowledge of the contents of the letter written to the Batavia Barracks by the owner of the *616 lost cap; that he had it in his possession when he recovered the cap; and that he did place his name and home address on the package. These facts, standing alone, warrant the inference that he did so for the purpose of having the check sent to him at his home address. Indeed, if that were the only permissible inference it would probably, in connection with the other testimony, have furnished the substantial evidence required to sustain the charge. However it seems to me that was another equally permissible inference. Petitioner testified that when he found- the cap he suggested to the restaurant keeper who then had it, after informing her of the contents of the letter, that she mail it to the owner, but that she requested him to do so because she did not have the requisite facilities to return the cap to its owner. This woman was interviewed by an investigator for petitioner’s superior officer prior to the preferment of charges. If petitioner’s testimony in this respect was untrue, contradiction was possible by calling her. She was not called, nor was any proof made that she was unavailable. One is warranted, then, in accepting that much of the trooper’s testimony as true. If so, then certainly when he made that suggestion he did not then have in mind soliciting the payment of the reward to himself, personally, or for the benevolent association. Under the regulations, when he received the cap into his possession, he became responsible for its safe return to the owner. Putting his name and address on the box was simply the precaution which the ordinary prudent person would have taken. The practice, if not the official regulation, of the Post Office Department requires a return address on a package. Rejecting entirely the trooper’s explanation as to his purpose, still the inference, which seems to me equally as permissible and reasonable as the one which must have been drawn, remains, that he wrote his name and address for the exact purpose to which he testified.
If, then, petitioner’s act gave rise to two equally permissible and reasonable inferences, one favoring hdnesty of purpose, and the other, dishonesty, certainly the elementary rule is, since fraud or dishonesty is never presumed, the inference establishing an honest purpose should have been drawn, and not the one establishing a dishonest motive. That is especially true as to petitioner, who, for more than fifteen years, had served efficiently in the State Police Department without a blemish on his record. I conclude, therefore, that there was no basis for the drawing, by the trier of the facts, of an inference of a dishonest purpose on the part of petitioner to solicit the reward to be paid to him.
*617 Passing now to the second inference, again, there was no direct evidence that petitioner even knew that the owner of the cap had sent the $5 check payable to Ms order, or that his wife had indorsed Ms name and deposited it to the credit of the association. Her act in doing so was a natural one. She would normally conclude, from the words on the check “ For return of' cap ”, that it represented a donation sent to her husband for the association, of which he was president. The inference that he did have that knowledge could only be drawn, however, from the relationship of petitioner and his wife. I concede that if this were a normal relationship, where a husband and wife lived together in the same house practically every day, it would be strange that his wife should not disclose to him the receipt of this check and what she had done with it. However, this was not a normal relationship. Petitioner was stationed at the Batavia Barracks, on twenty-four-hour duty, approximately forty miles from Niagara Falls, where Ms wife lived in their home. To infer then, from such a relationship, that petitioner knew of the receipt and use of this check would be basing that inference of fact upon a rather frail basis. In any event, if the drawing of the first inference establishing a dishonest purpose be regarded as unwarranted, there would be still less basis for the drawing of the second inference.
Although the trier of the facts was.not required to believe the testimony of petitioner and Ms wife, since they were inter-' ested witnesses, still nothing is clearer than the rule stated in Moore on Facts (Vol. 1, § 131) citing Miller v. Smith (20 App. Div. 507, 510-511) and Williams v. Van Norden Trust Co. (104 App. Div. 251, 256) that although the trier of facts is not bound by the testimony of a witness because he is an interested party, there is .no justification for not only refusing to believe the witness, but without further evidence, finding the exact contrary from his testimony. While' there can be no question of the evidentiary rule as to an interested witness, still there is a recognized exception, which is, that the rejection is unwarranted where the testimony is uncontradicted, as here, by any direct evidence, or by any legitimate inferences from other evidence, and it is not improbable, nor in its nature surprising nor suspicious (Hull v. Littauer, 162 N. Y. 569). The testimony of this couple, I believe, falls within the foregoing exception. I find nothing unreasonable nor improbable in it.
Petitioner’s complaint of the refusal to permit any cross-examination of the superior officer preferring the charges is justified. TMs cross-examination was clearly to develop facts *618 which would have warranted a finding of bias and ill will toward petitioner. While I appreciate that the Superintendent, as trier of the facts, although he could not refuse petitioner the right of cross-examination, could limit it (Matter of Friedel, 296 N. Y. 347, 352-353), still the rather sharp curtailment of the cross-examination in this respect attracts one’s attention, and while standing alone, would not warrant a reversal of the determination, nevertheless it is a circumstance which may well be considered in determining the basic question whether there was substantial evidence to sustain the charge.
I conclude that the finding of guilt is not supported by the requisite quantum of proof. 1 have discussed the second charge only, because the other three are interlinked with it, and fall if it does.
All concur with Harris, J.; Larkin, J., in a separate opinion. Present — Harris, MoCurn, Larkin and Love, JJ.
Determination annulled on the law and facts, with $50 dollars costs and disbursements and petitioner ordered reinstated.