## ULLMAN v. N. SOBEL, Inc., et al.
## In re PERCZ & GAAL.

District Court, S. D. New York.

Feb. 6, 1931.

Weil, Coursen & Manges, of New York City (Horace S. Manges, of New York City, of counsel), for complainant.

I. Gainsburg, of New York City (Robert P. Levis, of New York City, of counsel), for defendant N. Sobel, Inc.

PATTERSON, District Judge.

This is a suit in equity brought by a trustee in bankruptcy to set aside an alleged voidable preference. The bankrupts were manufacturing furriers. They made and sold fur coats. An involuntary petition in bankruptcy was filed against them on October 17, 1927, and this was followed in due course by an adjudication of bankruptcy and appointment of the plaintiff as trustee. The defendant was a merchandise creditor of the bankrupts in an amount of about $12,000. Its claim arose from the sale of skins to the bankrupts in the early part of 1927, and was represented by trade acceptances of the bankrupts. The transaction complained of by the trustee was the transfer of a quantity of skins by the bankrupts to the defendant, which took place on or about September 28, 1927. These skins were valued by the parties at $6,829.75, and the suit is to recover that sum.

The September transaction came about in this way: On or about September 23, 1927, the bankrupts went to Meyer Sobel, an officer of the defendant, told him that they were financially embarrassed, and asked for assistance. Apparently they selected Sobel as the man to appeal to because of the fact that they had formerly worked for him and knew him well. They told Sobel that they were perhaps solvent, but had not taken inventory and were uncertain as to their exact status. Sobel said that he might help them if their condition warranted it, and it was arranged that Sobel and his accountant should go over their books and take an inventory so as to see what the true situation was.

Sobel and his accountant proceeded, on September 24th and September 26th, to make the audit and to take inventory. There is a dispute as to the dates, but I am satisfied that the above dates, being those furnished by the plaintiff's witnesses, are accurate. There is a greater dispute as to the result of the audit and appraisal. Sobel claims that a solvent condition was revealed. I have concluded, however, that the books and records of the bankrupts and a fair appraisal of the merchandise then on hand showed that liabilities exceeded assets, and that Sobel himself in the course of his examination must have discovered this to be the fact. Sobel thereupon, with the consent of the bankrupts, took a quantity of skins and gave them the defendant's credit memorandum of $6,829.75 to apply against the unmatured trade acceptances. There is no clear explanation as to the reason for this unusual transfer. When Sobel was examined in proceedings under section 21a of the Bankruptcy Act (11 USCA § 44 (a), in February, 1928, he said that the bankrupts had promised him an assignment of accounts to serve as collateral security for the defendant's claim, that they had later admitted their inability to furnish the accounts, and that in lieu of this he had insisted upon a return of the merchandise. Upon the trial of this case, however, Sobel claimed that he had learned of false financial statements issued by the bankrupts, and that it was because of this that he demanded and obtained a return of the goods. The evidence as to the false financial statements will be considered in greater detail later. A few days after the transaction of September 28th, Sobel loaned the bankrupts $2,000 and took fur coats as collateral security.

I have already indicated my conclusion that the bankrupts were insolvent on September 28, 1927, when the defendant recovered this merchandise, and likewise my conclusion that the defendant had reasonable cause to believe that there was an insolvent state of affairs.

The remaining question is whether the defendant's action amounted merely to a re-

scission because of fraud and a taking back of its own goods. The contention is that the bankrupts had issued ·false financial statements; that the defendant had relied upon such statements in selling skins to them; that its action in September was a rescission for fraud; and that what it took back was merely its own skins or what remained of them. If these four elements, false representation, reliance, rescission for fraud, and identity of the goods retaken, are established, then there was no preference. Ellet-Kendall Shoe Co. v. Martin (C. C. A.) 222 F. 851; Fisher v. Shreve, Crump & Low Co. (D. C.) 7 F.(2d) 159. In such case, the defendant merely regained property which in equity had belonged to it all along, and the essential feature of a preference, an appropriation of the debtor's property to the payment of a claim, is lacking.

It is not disputed that the bankrupts had given out false financial statements to the trade, one in 1926 and one in 1927. The 1927 statement may be disregarded, for it had not come to the defendant's notice when the sales in question were made. The defendant claims that it relied upon the 1926 statement. Sobel testified that he made inquiry of the bankrupts in January, 1927, when they wanted to buy skins, and that he was assured that their condition was the same as shown by the 1926 statement. This may well have happened, and I will assume that the defendant has shown reliance upon a false representation.

■ As for rescission because of fraud, it seems plain that this element is missing. Sobel testified that in September, 1927, the bankrupts confessed to him that they had given out a false statement and that he informed them that accordingly he was taking back his goods. I cannot accept this testimony as a true version of what happened, because it is at variance with what Sobel himself had testified to in the proceedings under section 21a. In those proceedings, he testified that he had been promised assignments of accounts to serve as collateral security for the debt, that the bankrupts did not have the accounts to assign, and that it was thereupon arranged that in lieu of the accounts he might take back merchandise. He characterized the transaction as a substitution of the merchandise as collateral in place of the promised accounts. He made no mention then of false representations or fraud. This testimony, given by Sobel within six months after the event, is utterly inconsistent with a rescission for fraud, and disposes of the de-

fendant's argument. While it may be that Sobel knew at the time of the September transaction that the bankrupts had given a false financial statement to the State Bank, I am convinced that he did not then know that any representations relied upon by him were false. He certainly did not demand the return of the goods on any such ground, and his testimony in 1928 shows that he attached no special significance to the falsity of the statement made to the bank. In this feature, the case is similar to Cunningham v. Brown, 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. 873, where the trustee of the bankrupt Ponzi estate sued depositors to recover as preferences payments made to them on the eve of bankruptcy. One of the defenses was that Ponzi had obtained the defendant's money on false representations and that in regaining it the latter had rescinded the contracts for fraud. Chief Justice Taft said (page 10 of 265 U. S., 44 S. Ct. 424, 426): "In the first place, we do not agree that the action of the defendants constituted a rescission for fraud and a restoration of the money lent on that ground. * * * There is no evidence that these defendants were consciously rescinding a contract for fraud."

■■ As already noted, it was also incumbent upon the defendant to show that the goods retaken by it were the identical goods which it had sold to the bankrupts. In the absence of such identity, the transaction was a preference. Clarke v. Rogers, 228 U. S. 534, 33 S. Ct. 587, 57 L. Ed. 953; Cunningham v. Brown, supra; Atherton v. Green (C. C. A.) 179 F. 806, 30 L. R. A. (N. S.) 1053; Watchmaker v. Barnes (C. C. A.) 259 F. 783, 788. Sobel says that the skins which were retaken were part of the very skins sold by the defendant to the bankrupts, that they bore the defendant's marks or stamps. Here again his testimony must be rejected. The stock records kept by the bankrupts show that the skins purchased from the defendants had been made up into coats to such an extent that the quantities remaining on hand as skins on September 28th were far less than the quantities taken by the defendant on that day. The unavoidable conclusion is that a large part of the skins turned over to the defendant must have been skins which the bankrupts had bought from other dealers.

■■ The transfer was a voidable preference. The effect of it was to diminish the bankrupts' estate by property worth $6,829.75, for which they received no present consideration. The plaintiff is entitled to inter-

est from the commencement of the suit. Kaufman v. Tredway, 195 U. S. 271, 25 S. Ct. 33, 49 L. Ed. 190; Levy v. Weinberg & Holman, Inc. (C. C. A.) 20 F.(2d) 565. The plaintiff will submit findings and conclusions in compliance with the new rule of the Supreme Court (Equity Rule 70½ [28 USCA § 723]).