AMELIA BLATTMACHER and Others, Plaintiffs, *v.* MARY A. BROWN and Others, Defendants.

ANNA S. PETTERSON and Others, Plaintiffs, *v.* WILLIAM H. APPLE-GATE and Others, Defendants

Supreme Court, Special Term, Kings County, April 23, 1937.

*I. M. Silberman, Louis L. LaVine,* and *Jacob B. Steinfeld,* for the plaintiffs.

*Ralph E. Cramp* and *Alfred Lusthaus,* for the defendants.

STEINBRINK, J. In each of the above actions the plaintiffs, as holders of participating certificates in two of the so-called Lehrenkrauss mortgage issues, seek to impress a constructive trust on all funds now in the possession of the Superintendent of Insurance, as liquidator of the Lehrenkrauss Mortgage & Guaranty Title Company (hereafter called the title company) and to have the said funds segregated until such time in the future when it can be determined that there are sufficient moneys on hand to pay these plaintiffs and all other claimants similarly situated. The facts are as follows:

In the Blattmacher action the title company held a $12,000 mortgage against which J. Lehrenkrauss & Sons had previously issued participating certificates aggregating $11,350. Without notice to the certificate holders the title company sold a $7,500 senior interest in the mortgage to a *bona fide* purchaser for value, retaining the

junior interest, which amounts to $3,500, after amortization payments. The junior participation, together with the interest collected thereon, is now held by the liquidator.

In the Petterson action the title company held a mortgage in the sum of $8,750 against which certificates have been issued by J. Lehrenkrauss & Sons in the sum of $7,275. A $6,500 senior interest in the mortgage was sold to a *bona fide* purchaser for value. The junior interest is now held by the liquidator.

Imposition of constructive trusts is sought on the theory that the title company, when it obtained these mortgages, was chargeable with knowledge of the outstanding particpating certificates. The mortgages were originally issued to Julius Lehrenkrauss, as surviving partner of J. Lehrenkrauss & Sons. He assigned the mortgage to the partnership which then consisted of Julius Luhrenkrauss, Charles F. Lehrenkrauss, J. Lester M. Lehrenkrauss, John Kaiser and Herman Richter. The partnership issued the participating certificates. Prior to or simultaneously with the sale of the first participating certificate, the mortgages were assigned by the partnership to Julius Lehrenkrauss, Charles F. Lehrenkrauss and J. Lester M. Lehrenkrauss, as trustees for the certificate holders. The trust assignment was never recorded. After the sale of the certificates, the mortgages were assigned to dummies who, in turn, assigned them to the title company. With one exception, all of the officers and directors of the title company were also members of the partnership. As individuals they knew of the outstanding certificates which they had themselves caused to be issued. The court will not assume that knowledge which they gained in one capacity evaporated when acting in another capacity. No such assumption can be made without a complete disregard of common sense and practical experience. Even though their knowledge was obtained while acting for the partnership, it is none the less imputable to the corporation which they served as officers and directors. (*Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441.) It follows that the title company took the mortgages subject to the rights of the certificate holders. Retention of the junior participations in the mortgages, over which the title company exercised untrammeled control, and sale of the senior participations, were plain acts of conversion. Under the circumstances, the injured certificate holders may look to equity for relief by way of constructive trusts. The plaintiffs' right to reach the underlying mortgages, even though their form had been changed by wrongful conversion, is a property right and not in the nature of a general claim. (*Matter of Cavin* v. *Gleason*, 105 N. Y. 256.) There can be no question concerning their right to reclamation of

the junior participation now held by the liquidator and the interest collected thereon. But whether on the facts disclosed the proceeds of the sale of the senior interest may be reclaimed, and, if so, to what extent, presents quite another question. The proof shows that the senior participation in the Blattmacher action mortgage was sold and the proceeds deposited by the title company on November 11, 1932, in its Brooklyn Trust Company " guaranty fund account." The amortization payments were deposited by the title company on the following dates in the following bank accounts: October 22, 1932, $50, Brooklyn Trust Company " Guaranty Trust Fund Account." November 5, 1932, $100, Kings County Trust Company " General Account." November 22, 1932, $100, Brooklyn Trust Company " Guaranty Fund Account." February 6, 1933, $200, Kings County Trust Company " General Account." February 25, 1933, $50, Brooklyn Trust Company " General Account." July 7, 1933, $500, Brooklyn Trust Company " General Account." The avails of the senior participation in the Petterson action mortgage did not pass directly to the title company, but were charged to the accounts receivable from J. Lehrenkrauss & Sons to the title company. On March 22, 1933, the accounts receivable were paid and deposited by the title company in its Brooklyn Trust Company " General Account " and in its Kings County Trust Company " General Account." In all, the sum of $15,000 was received by the title company for the senior participations, the earliest bank deposit having been made on October 22, 1932, and the final one on July 7, 1933. The other bank accounts in which the deposits were made were the only accounts maintained by the title company during the period in question, with the exception of a special account opened in March of 1933 and in which there was deposited only title fees in accordance with a regulation promulgated by the Superintendent of Insurance. The exhibits in evidence disclose that the $15,000 was commingled with other funds of the title company and that on September 11, 1933, the date of the liquidation order, there was on deposit in the three accounts the sum of $308.93.

Commingling of the trust funds with the general funds of the title company did not deprive the plaintiffs of their property rights. All of the commingled funds are deemed held in trust until there has been an equitable separation of the share of the cestui que trust. (Matter of International Milling Co. [Broderick], 259 N. Y. 77, 82; Importers & Traders' Nat. Bank v. Peters, 123 id. 272; Abraham v. American Exchange Nat. Bank, 191 App. Div. 594.) Where part of the commingled funds are spent it is presumed that the trustee has first withdrawn his own. (Knatchbull

v. *Hallett*, L. R. 13 Ch. Div. 696; *Importers & Traders' Nat. Bank* v. *Peters*, 123 N. Y. 272, 278; *Matter of New York Title & Mortgage Co.*, 151 Misc. 701, 705.) while termed a presumption it is in fact a substantive rule of law based upon the theory that a wrongdoer should not be permitted to destroy rights of the *cestui que trust* by withdrawals from the fund. (See " The Right to Follow Money Wrongfully Mingled with Other Money," 27 Harv. Law Rev. 125, 129.) But where the trustee has withdrawn part of the funds the rule is that the rights of the *cestui que trust* are limited to the lowest balance in the fund thereafter existing. (*Williams* v. *Van Norden Trust Co.*, 104 App. Div. 251; *Blair* v. *Hill*, 50 id. 33; affd., 165 N. Y. 672.) Here the lowest bank balances total $308.93 and it is against those funds alone that the equitable rights of the plaintiffs attach. Since the funds are insufficient to meet the claims of the plaintiffs and others similarly situated, orderly procedure and the due regard for the rights of all trust claimants require that the trust claims be submitted in the liquidation proceedings where priority payments may be ordered. Proceed accordingly.