Louis H. Pink, Superintendent of Insurance of the State of New York, as Rehabilitator of Bond and Mortgage Guarantee Company, Appellant, *v.* Title Guarantee and Trust Company, Respondent.

Argued January 12, 1937; decided April 27, 1937.

Charles E. Hughes, Jr., John F. Caskey, Curtiss E. Frank and John R. McCullough for appellant. The pleadings show on their face that the defendant is sued for breach of fiduciary obligation and as a constructive trustee, while its setoffs are individual claims. (Munson v. S., G. & C. R. R. Co., 103 N. Y. 58; Globe Woolen Co. v. Utica G. & El. Co., 224 N. Y. 483; Wendt v. Fischer, 243 N. Y. 439; Meinhard v. Salmon, 249 N. Y. 458; Hamm v. Christian Herald Corp., 236 App. Div. 639; Mathieson Alkali Works v. Arnold Hoffman & Co., 31 Fed. Rep. [2d] 1; Miller v. Schloss, 218 N. Y. 400; Fur & Wool Trading Co. v. Fox, Inc., 245 N. Y. 215; Falk v. Hoffman, 233 N. Y. 199; Sayer v. Wynkoop, 248 N. Y. 54; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262;

*Levy* v. *Drew*, 4 Cal. [2d] 456; *Palmer* v. *Doull, Miller Co.*, 233 Fed. Rep. 309; *Morris* v. *Windsor Trust Co.*, 213 N. Y. 27.) Claims belonging to defendant in its individual capacity may not be set off in a suit against it in a fiduciary capacity; and allowance of the setoffs here would also be inequitable. (*Fry* v. *Evans*, 8 Wend. 530; *Patterson* v. *Patterson*, 59 N. Y. 574; *Frank* v. *Mercantile Nat. Bank*, 182 N. Y. 264; *Britton* v. *Ferrin*, 171 N. Y. 235; *New York Title & Mortgage Co.* v. *Irving Trust Co.*, 241 App. Div. 246; 268 N. Y. 547; *Coffin* v. *McLean*, 80 N. Y. 560; *Burns* v. *Lopez*, 256 N. Y. 123; *Morris* v. *Windsor Trust Co.*, 213 N. Y. 27; *Irving Trust Co.* v. *Gunder*, 234 App. Div. 252; *Goldstein* v. *Goldsmith*, 235 App. Div. 744; *Allaire* v. *Silberberg*, 210 App. Div. 109; *Dakin* v. *Bayly*, 290 U. S. 143; *Western Tie & Timber Co.* v. *Brown*, 196 U. S. 502; *Cook County Nat. Bank* v. *United States*, 107 U. S. 445; *Libby* v. *Hopkins*, 104 U. S. 303; *Bank of United States* v. *Braveman*, 259 N. Y. 65.) Plaintiff's action is not an action on contract within the meaning of section 266 of the Civil Practice Act as it read prior to September 1, 1936. (*E. T. C. Corp.* v. *Title Guar. & Trust Co.*, 271 N. Y. 124; *Voehl* v. *Title Guarantee & Trust Co.*, 266 N. Y. 662; *Munson* v. *S., G. & C. R. R. Co.*, 103 N. Y. 58; *Village of Charlotte* v. *Keon*, 207 N. Y. 346; *Kittredge* v. *Grannis*, 244 N. Y. 182; *Poland Export Corp.* v. *Marcus*, 204 App. Div. 302; *Ebling* v. *Nekarda*, 148 App. Div. 193; 210 N. Y. 566; *People* v. *Wood*, 121 N. Y. 522; *Atkinson* v. *Fox*, 242 App. Div. 707; *Morris* v. *Windsor Trust Co.*, 213 N. Y. 27; *Britton* v. *Ferrin*, 171 N. Y. 235; *Fishkill Sav. Inst.* v. *National Bank*, 80 N. Y. 162.)

*Richard S. Holmes, W. H. L. Edwards* and *Eugene Z. Du Bose* for respondent. The complaint states a cause of action on contract within the meaning of former section 266 of the Civil Practice Act. (*Long Beach Trust Co.* v. *Warshaw*, 264 N. Y. 331; *Bien* v. *Freund*, 26 App. Div. 202; *Starr Cash Car Co.* v. *Reinhart*, 2

Misc. Rep. 116; *Roth* v. *Palmer*, 27 Barb. 652; *Andrews* v. *Artisans' Bank*, 26 N. Y. 298; *Wood* v. *Mayor*, 73 N. Y. 556; *Coit* v. *Stewart*, 50 N. Y. 17; *Lange* v. *Schile*, 117 App. Div. 233; *City Nat. Bank* v. *Nat. Park Bank*, 32 Hun, 105; *Carroll* v. *Sharp*, 67 Misc. Rep. 254; *Pecke* v. *Hydraulic Constr. Co.*, 21 Misc. Rep. 712; 23 App. Div. 393; *Conyngham* v. *Shiel*, 20 Misc. Rep. 590; *Wickham* v. *Weil*, 17 N. Y. Supp. 518; *Adams* v. *Schwartz*, 137 App. Div. 230.) Defendant's setoffs are asserted in the same right in which it is sued. (*Richard* v. *Credit Suisse*, 242 N. Y. 346; *Degraw* v. *Elmore*, 50 N. Y. 1; *Palmer* v. *Doull Miller Co.*, 233 Fed. Rep. 309; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380; *Moore* v. *Crawford*, 130 U. S. 122; *Salina Canyon Coal Co.* v. *Klemm*, 290 Pac. Rep. 161; *Libby* v. *Hopkins*, 104 U. S. 303; *Morris* v. *Windsor Trust Co.*, 213 N. Y. 17; *Topas* v. *Grant, Inc.*, 18 Fed. Rep. [2d] 724; *Valley Butter Co.* v. *Minnesota Co-Op. Creameries' Assn., Inc.*, 300 Penn. St. 102; *Cook County Nat. Bank* v. *United States*, 107 U. S. 445.) Under section 262 of the Civil Practice Act the setoffs are properly pleaded. (*Comton* v. *Preston*, 51 L. J., Ch. Div. [N. S.] 680; *Gray* v. *Webb*, 51 L. J., Ch. Div. [N. S.] 815; *Bank of Montreal* v. *Cruikshank*, 1 W. W. R. 381; *Beddall* v. *Maitland*, 17 Ch. Div. 174.) Plaintiff's motion was properly denied. (*Gordon* v. *Van Cott*, 38 App. Div. 564; *E. Forty-sixth St. R. Corp.* v. *Gutschneider, Inc.*, 103 Misc. Rep. 491; *Shotland* v. *Mulligan*, 60 Misc. Rep. 58; *State* v. *Superior Court*, 113 Wash. 439; *Goodman* v. *Rutchik, Inc.*, 171 N. Y. Supp. 152.)

RIPPEY, J. The Bond and Mortgage Guarantee Company is a domestic corporation organized under chapter 538 of the Laws of 1885. Its activities came under the supervision of the Superintendent of Insurance. On August 2, 1933, the Superintendent of Insurance took possession of its affairs under an order of rehabilitation made pursuant to the provision of article 11 of the Insurance Law (Cons. Laws, ch. 28) upon the grounds, among

others, and upon the findings of the court, that it was insolvent and in such condition that its further transaction of business would be hazardous to its policyholders, to its creditors and to the public, after a stipulation to that effect had been made by a majority of its directors and their consent to rehabilitation had been secured. It then had 48,462 holders of mortgage guaranties outstanding aggregating $722,246,552.80. The Superintendent thereupon became a statutory receiver. (*Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69, 80.) To insure equitable treatment for its creditors and to avoid preferences, the order of rehabilitation transferred to the Superintendent of Insurance possession of and title to all of the insolvent's property.

The Superintendent of Insurance, as rehabilitator of the Bond and Mortgage Guarantee Company, brought this action to recover from defendant the sum of $1,010,541.67, alleged to have been wrongfully procured from the insolvent on June 10, 1932, in exchange for worthless mortgages then owned by defendant or, at least, mortgages which had been in default for years and were of questionable value. A series of transactions are set up in the complaint extending from prior to 1920 to June 10, 1932, by which that result was accomplished. These transactions are alleged to have been wrongful, fraudulent and illegal and conceived and carried through by officers and directors common to both corporations with a design to bring about the unjust enrichment of defendant at the expense of the Bond and Mortgage Guarantee Company. Plaintiff asserts that he disaffirmed the transactions upon discovery of the fraud and tendered to defendant the property received from it in exchange for the money for which suit is brought to recover.

Defendant has set up in its amended answer five separate defenses and offsets. None of them arose out of the transaction set out in the complaint and none are in any way connected with the subject-matter of the action. The third offset arises upon a promissory note executed

by the insolvent and delivered to defendant under date of March 13, 1933, for $2,250,000, upon which $1,948,506.44 and accrued interest is alleged to be due; the fourth, fifth, sixth and seventh offsets arise on guaranties made by the insolvent to the defendant for payment of loans made by defendant to third parties. Plaintiff moved, under rules 109 and 110 of the Rules of Civil Practice, to dismiss these defenses and offsets. The motion was denied. The Appellate Division, affirming the order of the Special Term, certified to us the question: " Was plaintiff's motion to dismiss the third, fourth, fifth, sixth and seventh defenses and setoffs properly denied? "

The order of rehabilitation enjoined all persons (including this defendant) from interfering with the assets of the insolvent or from obtaining a preference or from bringing any action or other proceeding at law or in equity against the insolvent or its assets or against the Superintendent of Insurance. Obviously, defendant could not proceed to collect its claims by a direct action against or by way of counterclaim in any action brought by the Superintendent. Its position is that it nevertheless may offset its claims, arising on contract, against any recovery that plaintiff may have in this action, under former section 266 of the Civil Practice Act, inasmuch as the complaint, as it claims, is " on contract." In *New York Title & Mortgage Co.* v. *Irving Trust Co.* (268 N. Y. 547, 709), where the complaint contained causes of action on contract to recover moneys deposited by the insolvent with the Irving Trust Company prior to August 4, 1933, on which date the Superintendent of Insurance was appointed rehabilitator of that plaintiff and took possession of its affairs and assets, it was held that defendant might plead offsets arising on contract which had matured prior to that date under section 420 of the Insurance Law. The provisions of article 11 of the Insurance Law, so far as applicable, apply exclusively to the rehabilitation, liquida-

tion, conservation and dissolution of delinquent insurers, anything " in the laws of the state to the contrary notwithstanding," and the word " assets," as used in the article, " includes all deposits and funds of a special or trust nature." (§ 400).

We must look solely to the allegations of the complaint to determine the character of the action and it is the substance of the cause of action contained in those allegations, not the form of action, that determines the right of setoff. (*Village of Charlotte* v. *Keon*, 207 N. Y. 346.) The nature of the action or the remedy available does not depend upon any standardized legal nomenclature. To say that the action is " on contract " does not make it so. There is no allegation in the complaint that indicates that defendant promised or intended to return the money. In the absence of such an agreement or intention, it is the obligation of defendant which plaintiff asserts and which the law creates to return the money which it procured " under such circumstances that in equity and good conscience [it] ought not to retain it, and which *ex aequo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it." (*Miller* v. *Schloss*, 218 N. Y. 400, 407.) As said by this court in that case, that duty rests " upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Independent of any statute, form of action or legal nomenclature, the obligation to do justice rests upon all persons, natural or artificial, and the law will compel restitution from a person who obtains money or property from another fraudulently, unjustly, or without authority. (*Marsh* v. *Fulton County*, 10 Wall. [U. S.] 676, 684; *Salt Lake City* v. *Hollister*, 118 U. S. 256, 263; *Louisiana* v. *Wood*, 102 U. S. 294; *Ward* v. *Love County;* 253 U. S. 17, 24.) It is for the purpose of compelling restitution that this action is brought. (*Wendt* v. *Fischer*, 243 N. Y. 439, 444.)

It is too well settled to require the citation of authority that directors of a corporation hold a fiduciary relation to it. The facts underlying the transfer by the Bond and Mortgage Guarantee Company to defendant on June 10, 1932, constituted a fraud by which defendant cannot profit. Defendant, who perpetrated the fraud, will be treated as a trustee *ex maleficio*. The law constructs a trust in favor of the one on whom the fraud was practiced. (*Chesterfield* v. *Janssen*, 2 Ves. Sen. 124, 155; *Gale* v. *Gale*, 19 Barb. 249, 251; *Wendt* v. *Fischer, supra; Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58; *Meinhard* v. *Salmon*, 249 N. Y. 458; 3 Story on Equity Jurisprudence [14th ed., 1918] § 1590; 1 Perry on The Law of Trusts and Trustees [7th ed., 1929], § 166; 3 Bogert on The Law of Trusts and Trustees [1935], § 471.) The trust which the law erects is not based on promise, intention or actual fraud. The test of the trust is the fiduciary relation and the breach of the duty of honesty and fair dealing imposed by the fact of common directorate and officers. Jurisdiction, either at law or in equity, is founded not upon any true contract, express or implied, but upon the fraud and imposition practiced and upon the unjust enrichment of defendant under cover of confidential and fiduciary relations through the common directorate. (*Ryan* v. *Dox*, 34 N. Y. 307; *Wheeler* v. *Reynolds*, 66 N. Y. 227; *Sinclair* v. *Purdy*, 235 N. Y. 245, 253; *Foreman* v. *Foreman*, 251 N. Y. 237, 240.)

Having the common directorate and the result having been accomplished by acts *ultra vires* and otherwise illegal and fraudulent, whether executory or executed, the transaction, although not absolutely void, might have been avoided by the Bond and Mortgage Guarantee Company without inquiry by the court as to whether the transaction was beneficial to it or not (*Burden* v. *Burden*, 159 N. Y. 287, 307; *Globe Woolen Co.* v. *Utica G. & E. Co.*, 224 N. Y. 483; *Wendt* v. *Fisher, supra; Steinbeck* v. *Bon Homme Mining Co.*, 152 Fed. Rep. 333; *Corsicana Nat. Bank* v. *Johnson*, 251 U. S. 68) or by the

stockholders within a reasonable time after the discovery of the fraud (*Corsicana Nat. Bank* v. *Johnson, supra*). There is no assertion that either the corporation or its stockholders took any action to disaffirm. There is nothing in the complaint from which ratification of the transaction by the board of directors or stockholders of the Bond and Mortgage Guarantee Company or its acquiescence in the transaction can be found. To the time insolvency was declared and the rehabilitator appointed, nothing took place to interfere with the rehabilitator taking such action thereafter as he might be advised. Upon discovery of the fraud he disaffirmed the transaction and offered to return the property received by the Bond and Mortgage Guarantee Company in exchange for its cash, as he had the right and as it was his duty to do. (1 Tardy's Smith on The Law and Procedure of Receivers, § 34; *Porter* v. *Williams*, 9 N. Y. 142, 150.) Then and then only did the obligation on the part of defendant to act arise. There had previously been no debt, no duty on defendant to act, no obligation to perform.

Section 420 of the Insurance Law (which is included within the provisions of article 11), so far as material, provides that " in all cases of mutual debts or mutual credits between the insurer and another person, such credits and debts shall be set off and the balance only shall be allowed or paid." These offsets are not permissible under the provisions of the Insurance Law. At the time of insolvency there was no debt — no mutuality of debts and credits. (*Patterson* v. *Patterson*, 59 N. Y. 574.) From the face of the offsets it appears that the defendant was not in a position to assert or claim payment of or bring any action upon any of the matters set out therein. (*Fera* v. *Wickham*, 135 N. Y. 223.) Upon insolvency of the Bond and Mortgage Guarantee Company and the appointment of the receiver, a new principle came into operation, the rights of general creditors intervened, and " equity requires that the assets of the insolvent party be equally distributed among such general creditors;" while

this is an action at law, " the courts of law and equity follow the same general doctrines on the subject of setoff " in this jurisdiction. (Cf. *Bank of United States* v. *Braveman*, 259 N. Y. 65, 70.) Prosecution of this action with the allowance of the offsets in question would· result in the plaintiff being required to turn over to the defendant all of the property it received on June 10, 1932, whatever its value may be, and in addition the defendant would receive payment in full of its claims to the extent that recovery may be had by plaintiff on account of the cash delivered to the defendant at that time. Thus, the allowance of the offsets would create a preference. Defendant must take its chances to pro rate with other creditors in the administration of the assets of the insolvent.

Furthermore, it is clear that the claims of the parties are not held in the same right. (*Morris* v. *Windsor Trust Co.*, 213 N. Y. 27; *Topas* v. *Grant, Inc.*, 18 Fed. Rep. [2d] 724; certiorari denied, 274 U. S. 754; *Putman* v. *Handy*, 251 Mass. 196.)

In view of the foregoing, it· becomes unnecessary to consider the question as to whether certain of the offsets should be stricken out under rule 110 of the Rules of Civil Practice on the ground that they had been pleaded by defendant as setoffs in a prior action now pending between the same parties.

The order of the Appellate Division and that of the Special Term should be reversed and the motion granted, with costs in all courts, and the question certified answered in the negative.

O'BRIEN, J. (dissenting). Only a question of pleading is involved.

Defendant corporation was not a fiduciary in this transaction. The transfer of the bonds and mortgages to plaintiff was effected by officers common to both corporations. The Bond and Mortgage Guarantee Company participated in the exchange no less than the Title Guarantee and Trust Company. Although defendant received the benefit of the exchange, such tort as may

have been committed was not committed by defendant to any extent greater than by the corporation represented by plaintiff.

The pleadings show plainly that, even if a tort was committed by defendant, plaintiff elected to waive it and to sue for money had and received. This is an action on an implied contract against defendant in its individual capacity and not as trustee. (*Andrews* v. *Artisans' Bank*, 26 N. Y. 298, 301; *Wood* v. *Mayor*, 73 N. Y. 556, 559; *Rothschild* v. *Mack*, 115 N. Y. 1; *Vail* v. *Reynolds*, ·118 N. Y. 297; *Kittredge* v. *Grannis*, 244 N. Y. 182, 189.) As such, the debts owing by each corporation are mutual debts within the meaning of section 266 of the Civil Practice Act, as it existed at the date of the pleading, and of section 420, subdivision 1, of the Insurance Law. This rule has recently been applied in *New York Title & Mortgage Co.* v. *Irving Trust Co* (268 N. Y. 547, 709). Section 420, subdivision 1, of the Insurance Law is included within article 11, entitled "Rehabilitation, Liquidation, Conservation and Dissolution of Delinquent Insurers," and provides: "In all cases of mutual debts or mutual credits between the insurer and another person, such credits and debts shall be set off and the balance only shall be allowed or paid." It has special reference to the liquidation, rehabilitation and dissolution of insolvent insurers and, if the decision in *Bank of United States* v. *Braveman* (259 N. Y. 65), in which no reference is made to any similar provision in the Banking Law (Cons. Laws, ch. 2), is to be deemed applicable to an insolvent insurer, then section 420 of the Insurance Law will entirely fail of its apparent purpose and *New York Title & Mortgage Co.* v. *Irving Trust Co.* (*supra*) will be overruled.

LEHMAN, HUBBS and LOUGHRAN, JJ., concur with RIPPEY, J.; O'BRIEN, J., dissents in opinion, in which FINCH, J., concurs; CRANE, Ch. J., taking no part

Orders reversed, etc. (See 274 N. Y. 610.)