J. HENLEY FRIER, JR., and EWALD G. BAUM, Individually and as Successors to J. HENLEY FRIER, JR., and Others, Copartners under the Name and Style of HUDSON SYNDICATE, Appellants, v. J. W. SALES CORPORATION (Formerly J. ARTHUR WARNER & Co., INC.), Defendant, Impleaded with J. ARTHUR WARNER, Respondent.

First Department, March 7, 1941.

*John B. Doyle*, for the appellants.

*Hyman R. Friedman* of counsel [*Friedman & Friedman*, attorneys], for the respondent.

DORE, J. The action is in equity for an accounting and the amount found due thereon from both defendants for alleged breaches of duty relating to a deposit of $3,500 made by plaintiffs under a written contract between them as copartners under the name of Hudson Syndicate, and the corporate defendant J. W. Sales Corporation, formerly J. Arthur Warner & Co., Inc. Under the terms of the contract which is annexed to the complaint the corporate defendant as agent, depositary and fiduciary was to establish a stock trading account with funds deposited with it by plaintiffs, to buy and sell in said defendant's discretion certain types of corporate stocks and securities for the benefit of Hudson Syndicate and itself, to account to the syndicate therefor, to divide the profits one-third to the syndicate and two-thirds to the corporate defendant, and on cancellation of the contract, if the account was less than the deposit, to pay one-half of the deficit to the syndicate, and if the deposit was intact, to return it entirely to the syndicate.

The complaint alleges that pursuant to the contract plaintiffs deposited with the corporate defendant $3,500 for the contract purposes on August 28, 1932, and thereafter the corporate defendant claimed to have made purchases and sales of stock but never rendered a statement or account of the trading operations or returned the deposit, though duly demanded. As against the individual defendant, the complaint further alleges that he wrongfully used the $3,500 " in the alleged purchase and sale of corporate stocks and other securities, and in loans connected therewith, for his own account and profit, which said defendant claimed were for the account of the defendant J. W. Sales Corporation and Hudson Syndicate, under said contract," and the defendants

between them assumed sole knowledge and direction of the use and application of the moneys deposited, and the plaintiffs are without knowledge thereof. The individual defendant was president of the corporate defendant and signed the contract as such.

The learned court at Special Term held that no cause of action was stated against the individual defendant, as he owed the plaintiffs no duty or obligation since nothing was intrusted to him. Under the allegations of the complaint, which on this motion to dismiss for insufficiency we must assume to be true, we think the individual defendant may be held as a trustee *ex maleficio*. The complaint and the contract annexed thereto show that the money was deposited with the corporate defendant not as a loan or a mere general investment so that it became the money of the corporate defendant and part of its general assets. It was deposited as a separate fund to be held in a fiduciary capacity and used solely for the purposes and under the terms and conditions for which the deposit was made. The individual defendant who had executed the contract on the part of the corporate defendant knew this. Under the allegations against the individual defendant, plaintiffs may adduce facts to show that Warner used the funds deposited for his own trading purposes so that if there were profits, he would take them for himself, and if there were losses, he would claim the transactions were for plaintiffs' account under the contract. In using the trust fund deposited with the corporate defendant for his own account, the individual defendant, of course, breached a duty he owed the corporation. But as the moneys thus used were to his knowledge not the moneys of the corporation but a separate trust fund deposited with it for use solely pursuant to the terms of the contract, he made himself by such actions a trustee *ex maleficio*, and the plaintiffs have a cause of action not only against the corporation for the breach of the trust but against the officer who with knowledge of the trust relation appropriated and used the trust funds for his own personal transactions. In such case equity should entertain a suit for an accounting.

In *Fur & Wool Trading Co., Ltd.,* v. *Fox, Inc.* (245 N. Y. 215, 218), the court per ANDREWS, J., said:

" Clearly a thief, having sold stolen goods may be treated as a trustee of the proceeds and also of any property into which they have been transformed, so long as either may be identified. Under such circumstances broader relief may be obtained in equity than at law. Where necessary, an accounting may be had.

" \* \* \* Because a trustee has mingled them [the proceeds of trust funds] with his general funds the right to a resort to equity is not ended. The same rule exists as to a trustee *ex maleficio*.

If equity has properly obtained jurisdiction it may retain it so as to afford proper relief — personal judgment in such a case against the wrongdoer."

Of course the officer of a corporation who signs a corporate contract as president is not ordinarily responsible to the other contracting party if he uses for his own purposes the moneys paid to the corporation under the contract where the moneys so paid and so diverted had become the moneys of the corporation and part of its own funds. (See *Van Weel* v. *Winston*, 115 U. S. 228.) Here, however, the moneys were a separate trust fund in the hands of the corporation and known to the officer to be such. If a depositor gives to a trust company moneys to be held by it in a fiduciary capacity for investment and reinvestment for the depositor's account, and the trust officer of the corporation steals the trust fund and uses it for his own account and profit, charging losses against the account when he loses and taking the profits as his own if he gains, he is liable not only to the trust company but to the depositor of the trust fund as a trustee *ex maleficio*. In such case the depositor may demand from him as well as from the trust company an accounting in equity.

Equity jurisdiction includes not merely express or substantive trusts, but also constructive trusts, a purely remedial institution implied by equity *in invitum*. " Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. * * * If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. Courts of equity, by thus extending the fundamental principle of trusts, * * * are enabled to wield a remedial power of tremendous efficacy in protecting the rights of property." (1 Pomeroy's Equity Jurisprudence [4th ed.], § 155, pp. 190, 191.) " In order to constitute a person who takes trust property or trust money for his own purposes a constructive trustee of it, he must have notice that it is being misapplied by being transferred to him, or, in other words, he must be party to a fraud or breach of trust on the part of the actual trustee." (33 Halsbury's Laws of England [2d ed.], ¶ 342, p. 189 *et seq*. and numerous cases cited.)

Warner had knowledge that the money was being misapplied when he took it from the sales corporation and transferred it to himself. Warner comes within the rule applicable to conscious wrongdoers which is stated in Scott on Trusts as follows:

" Where a trustee in breach of trust disposes of trust property and receives other property in exchange, the beneficiaries can charge him as constructive trustee of this property or at their option can enforce an equitable lien upon it to secure their claim against the trustee for damages for breach of trust. The same remedies are applicable wherever a conscious wrongdoer uses the property of another in acquiring other property; the person whose property is so used is entitled at his option either to enforce a constructive trust or to enforce an equitable lien upon the property so acquired.

" Where A's money is wrongfully used by B in purchasing shares of stock which later rise in value, A can charge B as constructive trustee of the shares, and compel him to surrender the shares if he has them or the proceeds if he has sold them. * * *

" The principle is applicable also where a person wrongfully acquires title to property and exchanges it for other property, even though he is not in a fiduciary relation to his victim." (3 Scott on Trusts, §§ 508, 508.1, pp. 2432–2434.) (See, also, annotation on fraudulent diversion of funds in 43 A. L. R. 1415, 1425, 1426.)

Plaintiffs properly resort to equity not only to obtain an accounting but to follow the fund which was placed in the hands of the defaulting trustee and appropriated for his own purposes by the individual defendant. Equity will intervene and declare the wrongdoer a trustee. (*Falk* v. *Hoffman*, 233 N. Y. 199.) An action in conversion would not be a remedy as adequate to the plaintiffs as the one they are seeking to enforce. (*McKenzie* v. *Wappler Electric Co., Inc.*, 215 App. Div. 336, 342.)

The order dismissing the complaint as against the individual defendant was erroneous. The facts alleged entitled plaintiffs to an accounting against the individual defendant as well as against the corporate defendant and to the general equitable relief prayed for To that this determination is confined.

The order so far as appealed from should be reversed, with twenty dollars costs and disbursements, and the motion of the individual defendant to dismiss the complaint denied, with leave to the said defendant to answer within ten days after service of order, on payment of said costs.

Martin, P. J., Glennon, Cohn and Callahan, JJ., concur.

Order, so far as appealed from, unanimously reversed, with twenty dollars costs and disbursements, and the motion denied, with leave to the defendant-respondent to answer within ten days after service of order, on payment of said costs.