Bernard J. MALONE, as Trustee in Bankruptcy of Little Falls Dairy Company, Inc., Bankrupt, Plaintiff,

v.

David GIMPEL, Defendant.

Civ. No. 5188.

United States District Court
N. D. New York.

July 17, 1956.

Affirmed March 28, 1957.
See 244 F.2d 954.

James A. McTiernan, Little Falls, N. Y., for plaintiff.

Bartle Gorman, Utica, N. Y., for defendant.

BRENNAN, Chief Judge.

The plaintiff in this action seeks the recovery of $10,000, withdrawn by the defendant from a bank account standing in the name of the bankrupt, within four months of its adjudication in bankruptcy.

The plaintiff's complaint seeks a judgment against the defendant based upon three separate causes of action. The first and third causes of action are similar in that they allege the wrongful withdrawal of funds belonging to the bankrupt by the defendant who at that time was an officer and director of the bankrupt. The second cause of action seeks the recovery of $10,000 upon the theory that the payment made to the defendant created a preference under the provisions of the bankruptcy law.

As a matter of convenience, this action was tried together with civil action No. 5187, D.C., 151 F.Supp. 544, which involved business transactions between the bankrupt, the present defendant and an additional third party who was made a defendant in the latter action. The evidence offered discloses no serious factual dispute and the findings follow in narrative form.

The Little Falls Dairy Co. Inc., hereinafter referred to as "Little Falls" or the "bankrupt", is a corporation primarily engaged in the purchase of fluid milk from the producers in the vicinity of Little Falls, N. Y. and the marketing of same to distributors in the vicinity of the City of New York.

The defendant is an officer and director af a corporation known as "Gimpel Farms Inc." located at Maspeth, Long Island, and engaged in the distribution of milk in the New York City area. The record discloses that for some years prior to 1953 and continuing up until Jan. 23, 1953 business relationships existed between Little Falls and Gimpel Farms whereby fluid milk was sold by Little Falls to Gimpel Farms. On Jan. 29, 1951 a written agreement of purchase and sale was entered into between the two parties, to commence on Mar. 1, 1951, to run for one year. It was later extended to Mar. 1, 1953. On the same day, a written

agreement was entered into between Little Falls, as one party, and the defendant and one Bolstein, as the other party, whereby the sum of $30,000 was loaned or advanced by the two individuals, to be repaid in accordance with the terms of the agreement. These agreements are referred to in more detail in case No. 5187 and are not essential to this decision and are mentioned here as a history of the transactions and as indicating some knowledge on the part of this defendant as to the financial standing of Little Falls.

On Jan. 14, 1953, an agreement was entered into between the defendant and one Zipser and Charles Braveman, individually and as Vice President of Little Falls Dairy Co. This instrument is very definitely involved in this litigation. It bears the individual signatures of defendant and Zipser and the individual signature of Charles Braveman and Little Falls Dairy Co. Inc. by Charles Braveman, Vice President. The agreement recites that Braveman is the majority stockholder of Little Falls which corporation is in financial difficulties and is in immediate need of funds for the continuance of its business. Insofar as material here, the agreement contemplates the investment by Gimpel and Zipser of the sum of $20,000 in Little Falls as additional capital. Some 4,500 shares of stock of Little Falls were to be transferred to Zipser and Gimpel or their designees.

Paragraphs 5 and 6 of the agreement are particularly involved here and set out below.

"5. The within agreement is further subject to audit of the books and records of Little Falls Dairy Co. Inc. by A. S. Schneck, certified public accountant, and in the event the said Herman B. Zipser and David Gimpel are not satisfied with the financial status of Little Falls Dairy Co., Inc. for investment purposes by reason of circumstances reflected on the complete audit of the said books and records by the said A. S. Schneck, then in such event the said Herman B. Zipser and David Gimpel shall have the right to refuse to proceed with any investment in Little Falls Dairy Co. Inc. and return the stock theretofore received by them to the escrow account of Herman B. Zipser in accordance with the agreement under which he heretofore held same.

"6. All sums advanced by Herman B. Zipser and David Gimpel prior to the completion of the said audit by A. S. Schneck shall be deemed loans to Little Falls Dairy Co. Inc. to be repaid out of collections due Little Falls Dairy Co. Inc. from Caldwell Farms, Inc. and Gimpel Farms, Inc. subsequent to the date hereof, and for such purpose the said Little Falls Dairy Co. Inc., by Charles Braveman, Vice-President hereby assigns to the said Herman B. Zipser and David Gimpel all sums of money due and payable from the date hereof by Caldwell Farms, Inc. and Gimpel Farms, Inc., as collateral security for the said loan with full right to collect same on account of all sums theretofore advanced if they so desire, and the said Little Falls Dairy Co. Inc. hereby authorizes Joseph McGinley, its sales manager to collect the said checks and endorse same as required to effectuate payment of any said indebtedness."

The next day after the execution of the agreement referred to above and on the evening of Jan. 15, 1953, a meeting of the directors of Little Falls was held at Little Falls N. Y. Braveman resigned as Vice President and director of Little Falls. The defendant Gimpel was present at the meeting and was elected a director and treasurer of Little Falls. The defendant, Gimpel, and one Bolstein, who was also elected a director, were authorized to sign checks for Little Falls. The next day, on Jan. 16, 1953, two new bank accounts were opened by Gimpel in the Herkimer County Trust Co. at Little Falls. The account in the name of "Little Falls Dairy Co. Inc., Milk Account" was

made up of a check of $10,000. The check was signed by Gimpel Farms Inc. and payable to Little Falls. Without dispute, this check represented an advancement or loan by the defendant, Gimpel and Zipser and the plaintiff contends the agreement was in accordance with the written agreement of Jan. 14, 1953. The balance of the account, $7,-508.62, was made up of a check from Gimpel Farms, payable to Little Falls, and represented the balance due from Gimpel Farms to Little Falls on account of milk previously delivered. The second bank account was opened in the same banking institution in the name of "Little Falls Dairy Inc.", the original deposit of $3,018.40 consisting of a check of Caldwell Farms Inc., payable to Little Falls and represented payment to Little Falls for milk previously delivered by Little Falls to Caldwell Farms. Little Falls had previously maintained three bank accounts at the Little Falls National Bank, one known as a "milk account", one as a "dividend account" and the other simply bore the name of "Little Falls Dairy Co. Inc.". These three bank accounts became essentially inactive after the opening of the two new accounts as above set forth.

In accordance with the agreement of Jan. 14, 1953, a partial audit of the books and records of Little Falls was made by Mr. Schneck. His pencilled report showed liabilities as of Jan. 21, 1953 of $193,668.09. The report did not attempt to enumerate the assets of Little Falls. The report so furnished by the accountant did not meet the approval of the defendant and on the same day, to wit, Jan. 21, 1953, he drew a check in the amount of $8,000 payable to himself and signed "Milk Account, Little Falls Dairy Co. Inc., David Gimpel, Treasurer". On the same day, he drew a check in the amount of $2,000, payable to David Gimpel, signed "Little Falls Dairy Co. Inc., David Gimpel, Treasurer". The defendant received the cash represented by the two checks in the total amount of $10,000. One-half of said amount was returned to or credited to Zipser. The milk ac-

count at the time the check was drawn had a balance of $8,657.41 and the other account at the time the $2,000 check was drawn had a balance of $2,517.05. On the evening of the same day, Jan. 21, 1953, a meeting of the directors of Little Falls was held. The defendant disclosed the financial condition of the company as reported by the accountant which he asserted was contrary to the statement made to him by Braveman and which was therefore unsatisfactory to him. He indicated an election to cancel the contract. Defendant Gimpel also resigned as Treasurer of Little Falls and the resolution, authorizing the defendant and Bolstein to sign checks of the corporation, was rescinded.

On Feb. 16, 1953 Little Falls filed a petition under Chapter 11 of the Bankruptcy Act in the Clerk's office of this district. Bernard J. Malone was thereafter appointed trustee and he brings this action, as indicated above.

The defendant, in his answer and in the brief submitted, denies the allegations of the complaint and appears to take alternative positions—(a) That the $10,000, which is the subject of this action, never became the property of Little Falls but that title was retained by the defendant during the period of time required to audit the books of the bankrupt and was subject to the condition that such audit would reveal a financial condition satisfactory to the defendant. (b) That the moneys advanced were induced by the false representation of Little Falls through its Vice President and General Manager, Braveman, as to the extent of Little Falls' outstanding liabilities. Defendant concludes that paragraphs 5 and 6 of the agreement of Jan. 14, 1953, above quoted, were induced by such fraud which vitiated the agreement and that the repayment to Gimpel of the moneys represented by the $8,000 and $2,000 checks was in fact and law the turning back to him of moneys which were rightfully and legally his.

To decide the problem presented, the arrangement under which the moneys

were received by Little Falls, must be first determined.

The plaintiff depends upon the agreement of Jan. 14, 1953 as evidencing the arrangement and the introduction of same is prima facie evidence thereof.

The defendant's first contention is dependent upon the testimony of the defendant to the effect that on Jan. 15, 1953 and prior to the deposit of the money, as outlined above, the defendant met with the directors of Little Falls and, after discussing the situation with them, advised that the moneys would be advanced as an evidence of good faith, that same would be put in a separate bank on the signature of Gimpel and when the result of the accountant's audit was made known, the moneys would be left for the benefit of Little Falls or would be withdrawn by Gimpel in the event the accountant's report was unsatisfactory. In other words, the defendant admits the making of the Jan. 14, 1953 contract which covered the contingency of the advancement of moneys by Gimpel which would be considered as loans but asserts in effect that, that part of the agreement was abandoned the next day and a new arrangement, entirely oral, was made with the directors of Little Falls. The contention is rejected and the reasons will be briefly stated.

The transaction, as testified to by Gimpel, appears to be an informal discussion with some of the directors rather than a transaction entered into by the directors acting in their capacity as such. There is no evidence to show the number of directors present at the time Gimpel outlined his alleged offer of advancement or deposit as evidence of good faith. There is no evidence of any formal approval by the directors of the alleged transaction and lastly the transaction was not carried out even as far as Gimpel is concerned, according to the terms thereof. In fact, the money so advanced was commingled with other funds of Little Falls and was not retained intact awaiting the report of the auditor. Defendant offered to present evidence to show that the same arrangement was discussed by Gimpel with the milk producing farmers whose milk was purchased by Little Falls. The offer of proof was rejected and it is obvious that no binding arrangement could be made with the bankrupt through the means of a conference or agreement with its milk producing creditors.

Having concluded that the contract of Jan. 14, 1953 represented the arrangement by which moneys were advanced, consideration thereof is the next problem. It stands undenied that in seeking the benefits of the agreement, above mentioned, Braveman, the majority stockholder, director, Vice-President and apparent manager of Little Falls, represented that its liabilities were approximately $130,000, and that the above agreement was executed in reliance upon the correctness of that representation. It also appears without contradiction from the auditor's report that in fact the liabilities of Little Falls as of Jan. 21, 1953 were approximately $193,000. It was stipulated that there was no substantial difference in the liabilities between Jan. 14, 1953 and Jan. 21, 1953. It is correct that Gimpel did not rely entirely upon Braveman's statement for the consummation of the entire agreement but it seems inescapable that he did rely upon the representation for the advancement of the $10,000 prior to the report of the auditor. Absence of reliance is not shown by the exaction of security especially where the defendant must have known that the accounts were subject to a prior assignment. It follows that the $10,000 advanced on July 15, 1953 and deposited on July 16, 1953 was obtained by misrepresentation and the provisions of the agreement relative to their status as loans to Little Falls are inapplicable.

This transaction, having occurred prior to bankruptcy, it would seem that state law would control as to the relationship established thereby and if a trust exist, state law would control as to the identification of the trust property. Collier on Bankruptcy, 14 Edition, Vol. 4, Par. 70.25 at 1148–1149, In re Tate-

Jones & Co., D.C., 85 F.Supp. 971, at page 980. Actually the point seems unimportant because as in Johnson v. Morris, 10 Cir., 175 F.2d 65, both federal and state law seem to require the same decision.

■ It is elementary that fraud in the inducement of a contract renders the transaction voidable not void and the injured party may elect to affirm the contract and sue for damages or he may rescind the contract. This principle is expressed in the comparatively recent case of Schlenoff v. Kroll, 207 Misc. 1082, at page 1085, 141 N.Y.S.2d 370, and textbook references and reported cases are cited. See also Goess v. A. D. H. Holding Corp., 2 Cir., 85 F.2d 72.

■ Here, the defendant unquestionably elected to rescind upon the discovery of the misrepresentation as to the amount of Little Falls' liabilities. The action was prompt and direct. The following quotation, taken from Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, at page 386, 122 N.E. 378, at page 380, shows that under the circumstances both state and federal courts hold that the wrongdoer becomes a trustee holding the proceeds of his wrong for the benefit of the injured party.

"'* * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Moore v. Crawford, 130 U.S. 122, 128, 9 S.Ct. 447, 32 L.Ed. 878; Pomeroy Eq.Jur. sec. 1053 * * *.'"

See also Pink v. Title Guarantee & Trust Co., 274 N.Y. 167, 8 N.E.2d 321; Matter of Accles' Estate 153 Misc. 421, 275 N.Y.S. 430. The above principle seems to be uniformly recognized and is often cited. Miller v. Callusser, 167 Misc. 393, 3 N.Y.S.2d 994; Maas v. Weitzman, 191 Misc. 348, 77 N.Y.S.2d 300. See also Lightfoot v. Davis, 198

N.Y. 261, at pages 271–272, 91 N.E. 582, 29 L.R.A.,N.S., 119. The citation of Moore v. Crawford, 130 U.S. 122, 9 S.Ct. 447, 32 L.Ed. 878, in the above quotation, is sufficient to show federal agreement.

■ In attempting rescission, the defendant is limited to recourse against the identical property impressed with a trust, which is held by the wrongdoer. Gimpel may take back only property which in equity belonged to him. Ullman v. N. Sobel, Inc., D.C., 47 F.2d 612. Commingling of trust moneys with personal funds is not a bar so long as they are capable of identification. Importers' & T. N. Bank v. Peters, 123 N.Y. 272, at pages 278–279, 25 N.E. 319; Frier v. J. W. Sales Corp., 261 App.Div. 388, 25 N.Y.S.2d 576; Matter of Liebman's Estate, 189 Misc. 282, 60 N.Y.S.2d 482; Blattmacher v. Brown, 163 Misc. 389, 295 N.Y.S. 936; Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873; City of New York v. Rassner, 2 Cir., 127 F.2d 703, at page 705; In re Kountze Bros., 2 Cir., 79 F.2d 98, at pages 101–102, 102 A.L.R. 367; In re United Cigar Stores Co. of America, 2 Cir., 70 F.2d 313, at page 316.

■ The question as to the existence of a preference is covered by the general rule that property converted by or obtained by the bankrupt by fraud can be claimed only so long as it can be definitely traced and the repayment prior to bankruptcy is a preference except where made from the very property taken. Morris Plan Industrial Bank of New York v. Schorn, 2 Cir., 135 F.2d 538, and cases cited.

■ Applying the above principles here, we find a situation where moneys were obtained by a bankrupt by a fraudulent misstatement. They were commingled with another item representing a payment made by a creditor to the bankrupt for goods delivered. The total of the two items amounted to $17,558.62. The defendant himself, in his capacity as an officer of the bankrupt withdrew from that account for the pur-

pose of the bankrupt $8,901.21, leaving a balance in the account of $8,657.41. It may be said that the balance represented a part of the $10,000 previously advanced and would be the greatest amount that the defendant can trace as his own property. Of that sum, the defendant withdrew the sum of $8,000 and, as above indicated, the remaining $2,000 was paid from an account in which concededly none of the defendant's funds were deposited. It follows that the payment by Gimpel to himself on Jan. 21, 1953 of the $8,000 did not deplete the assets of Little Falls since it was in equity his own money. The payment of the sum of $2,000 was a preferred payment under the provisions of the Bankruptcy Act, 11 U.S.C.A. § 96 if Gimpel had reasonable cause to believe that Little Falls was insolvent. No serious argument is advanced as to the financial condition of Little Falls on Jan. 21, 1953, and no evidence other than that which appears in the written exhibits was offered on that point. That Gimpel, being an officer and manager of Little Falls on that date was charged with the knowledge of its financial condition cannot be disputed. Each case depends upon its own facts and here the financial difficulties of Little Falls were recited in the very agreement which is the basis of this action. When the repayment was made, Gimpel had knowledge of the amount of the bankrupt's indebtedness. The sale of 4,579 shares of $10 par value stock for the sum of $20,000 in itself is enough to put the defendant upon inquiry as to Little Falls' financial condition. The dissatisfaction of the farmer producers was clearly brought to Gimpel's attention. Gimpel cannot close his eyes to the amount of outstanding liabilities, included among them being a loan to him which in fact was in technical, if not actual, default. It is sufficient to say that the defendant knew or should have known at the time of the repayment on Jan. 21, 1953 of the $10,000; that Little Falls was insolvent and that the payment would necessarily reduce the amount which could be paid to other creditors from the bankrupt's estate.

The plaintiff claims that Gimpel, being an officer and director of Little Falls, had no right or authority to repay or return the moneys so obtained. There is no question as to the obligation of a director and officer to the corporation, its stockholders and creditors. The relationship was fiduciary in character and good faith especially in dealing with his own personal interests as required of Gimpel under the facts. I find no authority, however, and none is cited which would penalize the director in returning to himself moneys obtained as the result of a fraud committed upon him.

Although not pleaded or urged in the brief, this contention seems to arise by reason of the provisions of N. Y. Stock Corporation Law, McK.Consol.Laws, c. 59, § 15. If applied literally, as in Moak v. Vet, 221 App.Div. 289, 223 N.Y. S. 247, it would nullify the equitable remedies afforded a defrauded creditor. The decision in Goldstein v. Wolfson, 2 Cir., 132 F.2d 624, at page 626 limits its application " * * * only to the right to recover unlawful preferences or fraudulent transfers * * *". There is no fraud here on the part of the defendant and the provision affords only an additional basis of recovery of the $2,000 which became an unlawful preference because he could not identify same as a part of moneys of which he was defrauded.

From all of the above, it is concluded that the payment by Little Falls to the defendant of the sum of $2,000 through the medium of a check, dated Jan. 21, 1953, constituted a prohibited preferential payment and that plaintiff is entitled to recover from the defendant the sum of $2,000 with interest from Mar. 15, 1954, the date of the commencement of this action. Ullman v. N. Sobel, Inc., D.C., 47 F.2d 612.

If other or additional findings or conclusions are deemed necessary, the parties may submit same within ten days.

Judgment is directed accordingly, and it is

So ordered.